# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 12, 2003 Session
### Heard at Memphis

## STATE OF TENNESSEE v. RICHARD ODOM a/k/a OTIS SMITH

**Automatic Appeal from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. 91-07049    Chris Craft, Judge**

_____

**No. W2000-02301-SC-DDT-DD** - Filed May 21, 2004
_____


WILLIAM M. BARKER, J., dissenting.

Because I am of the opinion that the Court of Criminal Appeals correctly held that the trial court properly permitted evidence and argument regarding the facts and circumstances of the defendant's prior violent felonies, I respectfully dissent. For the reasons given herein, I would affirm the defendant's sentence of death.

Effect of the 1998 Amendment to
Tennessee Code Annotated section 39-13-204(c)

The threshold and fundamental issue in this case is whether the 1998 amendment to Tennessee Code Annotated section 39-13-204(c) is an ex post facto law. If it is an ex post facto law under either the United States Constitution or the Tennessee Constitution, the amended statute may not be applied retroactively. If it is not an ex post facto law, then the inquiry becomes whether there are any other reasons to prevent its retroactive application.

*Ex Post Facto Analysis*

Article 1, Section 9, Clause 3 of the United States Constitution states that "[n]o Bill of Attainder or ex post facto Law shall be passed." The Supreme Court set out its ex post facto analysis under the federal constitution in Dobbert v. Florida, 432 U.S. 282 (1977). The defendant in Dobbert was tried and convicted for first-degree murder, second-degree murder, child torture, and child abuse. Florida's death penalty statute had been changed between the time of the murder and the time of trial. Under the statute in effect at the time of the commission of

1

the crime, the death penalty was presumed unless the jury made a recommendation of mercy, and such a recommendation was not reviewable by the trial judge.  At the time of trial, the new statute provided that the jury would render an advisory decision, which would not be binding upon the judge.  The trial court applied the new statute, and while the jury recommended a life sentence, the judge overruled that recommendation and sentenced the defendant to death.  The Florida Supreme Court affirmed.  The defendant appealed, arguing that Florida's new death penalty statute constituted an ex post facto law.

The Supreme Court held that application of the death penalty statute in effect at the time of trial was not a violation of the Ex Post Facto Clause.  Dobbert, 432 U.S. 282 (1977)  In so holding, the Court reasoned that "'[t]he crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish guilt, all remained unaffected by the subsequent statute.'"  Id. at 294. (quoting Hopt v. Utah, 110 U.S. 574, 589-90 (1884)).  "The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime."  Id. at 293-94.  The Court explicitly noted that a procedural change, even though it may work to the disadvantage of a defendant, is not ex post facto.  Id. at 293 (citing Thompson v. Missouri, 171 U.S. 380 (1898) (holding that a Missouri statute authorizing for the first time the comparison of disputed handwriting with any writing provided to be genuine was not an ex post facto law); Hopt v. Utah, 110 U.S. 574 (1884) (holding that a Utah law which changed the previous rule that no convicted felon could testify in a criminal case was not an ex post facto law)).

This Court, in Miller v. State, 584 S.W.2d 758 (Tenn. 1979), rejected the ex post facto analysis of Dobbert as a matter of Tennessee constitutional law, and instead adopted an older ex post facto analysis found in  State v. Rowe, 181 A. 706, 709-10 (N.J. 1935).  The Tennessee Constitution states that "laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of a free Government; wherefore no Ex post facto law shall be made."  Tenn. Const. art. I, § 11.  Miller gave five situations in which a law would violate this state's constitutional prohibition against ex post facto laws.

1.  A law which provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent.
2.  A law which aggravates a crime or makes it greater than when it was committed.
3.  A law that changes punishment or inflicts a greater punishment than the law annexed to the crime when it was committed.
4.  A law that changes the rules of evidence and receives (sic) less or different testimony than was required at the time of the commission of the offense in order to convict the offender.
. . . .
[5.]  Every law which, in relation to the offense or its consequences, alters the

2

situation of a person to his disadvantage[.]

Miller, 584 S.W.2d at 761 (quoting Rowe, 181 A. at 709-10). See also State v. Pearson, 858 S.W.2d 879, 881-82 (Tenn. 1993) (reaffirming the holding of Miller).

The defendant in Miller, after being found guilty of first-degree murder, was sentenced to death. He appealed his conviction on the grounds that he was tried under a statute which became effective April 11, 1977, for a crime committed on April 7, 1976, and that his capital sentence was therefore ex post facto. At the time of the commission of the crime, the legal punishment for first-degree murder was life imprisonment, as there was no constitutional procedure for the infliction of the death penalty at that time. The new statute, enacted subsequent to the crime, provided for a sentence of death following a first-degree murder conviction. This Court affirmed the murder conviction, but reduced the defendant's sentence to life imprisonment, holding that retrospective application of the new constitutional death penalty statute would violate the ex post facto prohibition of the Tennessee constitution. 584 S.W.2d at 761. The Court held that application of the five-part test precluded a sentence of death. Id.

Applying the five-part Miller test to the present case, it is clear that the 1998 amendment does not constitute an ex post facto law. (1) The amendment does not provide for the infliction of punishment upon a person for an act done which, when it was committed, was innocent. (2) It does not aggravate a crime or make it greater than when it was committed. (3) It does not change the punishment or inflict a greater punishment than the law annexed to the crime when it was committed. (4) It does not change the rules of evidence and require less or different testimony than was required at the time of the offense in order to *convict* the offender. The defendant's conviction is not at issue in this appeal. The amendment alters the evidence that the jury is to consider when weighing the aggravator during the *sentencing* phase of the trial.

With regard to the fifth category of ex post facto laws under the Miller test, the 1998 amendment does not disadvantage the defendant with respect to the elements of the crime or its range of punishment. Like the four categories of ex post facto laws before it, the fifth category applies to *substantive* changes in law that impact either the crime itself or alter the punishment therefore. Our courts have emphasized the importance of distinguishing procedural changes in the law from substantive changes. This Court addressed this distinction in State v. Pearson:

> [I]n determining whether an ex post facto violation exists in the context of sentencing, the critical question under both the United States and Tennessee Constitutions is whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred. The determination is made by comparing the standard of punishment prescribed by each statute, rather than the punishment actually imposed. Applying a law that inflicts the same or a lesser punishment raises no ex post facto concerns.

858 S.W.2d 879, 883 (Tenn. 1993) (citations omitted).

Two years after Pearson, the Court of Criminal Appeals reiterated the rule that procedural changes in the law which do not affect a defendant's substantial rights are not ex post facto laws.

State v. Bragan, 920 S.W.2d 227, 241 (Tenn. Crim. App. 1995) (holding that retroactive application of the "Hurley rule," which established that only a witness spouse may invoke the spousal privilege in a criminal proceeding, did not violate the constitutional prohibition against ex post facto laws because it did not take away an available defense or change the elements of the offense or the ultimate facts necessary to establish guilt). The Bragan court held that

> laws which change a rule of evidence, but which do not increase the punishment nor change the elements of the offense or the ultimate facts necessary to establish guilt, but only remove existing restrictions on the competency of certain classes of evidence or of persons as witnesses do not constitute ex post facto laws.

Id. See also State v. Pike, 978 S.W.2d 904, 926 (Tenn. 1998) (adopting and approving in its Appendix the holding in Bragan).

The Pike court approved that portion of the United States Supreme Court's holding in Dobbert that not every change of law that "may work to the disadvantage of a defendant" is an ex post facto law. Pike, 978 S.W.2d at 926. The prohibition of ex post facto laws is instead intended to prevent retroactive deprivation of "substantive personal rights" and does not "limit the legislative control of remedies and modes of procedure which do not affect matters of substance." Id. (quoting Dobbert, 432 U.S. at 293). Therefore, we held that "laws which change rules of procedure but which do not affect any substantial right of a defendant are not ex post facto laws." Id.

The State has argued that the amendment to Tennessee Code Annotated section 39-13-204(c) should be construed so as to apply to all cases pending at the time of the amendment. However, the majority disagrees, grounding its reasoning in essentially three points: (1) the amendment fundamentally changed the operation of the (i)(2) aggravator, amounting to a substantive change in the law; (2) statutes are always presumed to operate prospectively in the absence of legislative intent to the contrary; and (3) Tennessee Code Annotated section 39-11-112 shows that the legislature intended for the (i)(2) aggravator amendment to apply prospectively only. I disagree with each of these arguments presented by the majority, and I instead conclude that the trial court properly applied the amended statute to the defendant's re-sentencing.

With respect to the nature of the 1998 amendment, it seems that the change to the (i)(2) aggravator is not nearly so drastic as the majority presents it. Reading the amended portions of Tennessee Code Annotated section 39-13-204(c) closely, I note that the amendment does nothing other than alter the method by which the jury weighs the aggravator. The statute specifically limits the jury's consideration of this evidence to assigning weight to the aggravator.

Therefore, in my view, the 1998 amendment *does not* accomplish any of the following:

1. The amendment does not establish new substantive elements for finding the presence of the (i)(2) aggravator. Although the majority opinion discusses the 1998 amendments at length, no where does it mention that the (i)(2) aggravator itself was left unchanged by the 1998

4

amendment. This is an important point, however, as the aggravator reads exactly the same after the amendment as it did before the amendment. See Tenn. Code Ann. § 39-13-204(i)(2). The *only* thing that has been changed is that the jury now considers evidence of the circumstances of the prior felonies in weighing the (i)(2) aggravator vis-à-vis other aggravators and mitigators.[1]

2. <u>The amendment does not establish that new evidence is allowed to prove the presence of the (i)(2) aggravator beyond a reasonable doubt.</u> Just as the 1998 amendment does not change the elements of the (i)(2) aggravator, it likewise does not change the method of proving its existence in a particular case. Note that the amendment specifically restricts how the jury is to use the evidence: to "determin[e] the weight to be accorded the aggravating factor." Because a sentencing jury cannot weigh an aggravating circumstance until that aggravator has been proven beyond a reasonable doubt, <u>see</u> Tenn. Code Ann. § 39-13-204(g)(1), the amendment simply does not affect the proof needed to establish the aggravator's presence in any individual case.

Although one may be concerned that a jury would use the "facts and circumstances" evidence both to find and to weigh the aggravator, this concern is more properly addressed through limiting instructions and clear jury charges. The point remains, however, that this 1998 amendment is not designed to affect how the (i)(2) aggravator is proven in the first instance. As such, the majority's conclusion that the amendment substantively changes the mechanism for proving the aggravating circumstance supposes too much.

3. <u>The amendment does not force, compel, or suggest that the jury reach any conclusion as to the weight of the (i)(2) aggravator.</u> After hearing the "facts and circumstances" evidence, a jury could find that the aggravator is entitled to very little weight, just as it could conclude that the aggravator is entitled to great weight. The 1998 amendment does not affect the mechanism of how the jury weighs the evidence, nor does it affect how much weight a jury will assign the aggravator vis-à-vis the other aggravating and mitigating circumstances. In short, I disagree with the majority opinion to the extent that it suggests that the 1998 amendment affects any substantive right of the defendant.

I believe that the facts of this case are distinguishable from those that the majority cites. For the principle that the 1998 amendment here is substantive in nature, the draft cites <u>State v. Bush</u>, 942 S.W.2d 489 (Tenn. 1994) and <u>State v. Cauthern</u>, 967 S.W.2d 726 (Tenn. 1998), both cases in which the Court found a substantive change in the (i)(5) aggravator. However, in those cases, the language of that aggravator itself had been changed to require proof of "serious physical abuse beyond that necessary to produce death" rather than "depravity of mind." As I mentioned above, I agree that a substantive change in an aggravator occurs when its elements are

---

[1] I would be much more inclined to find a substantive change if, for example, the (i)(2) aggravator itself had been amended to require proof of *two* violent felonies, or one violent *offense*. After all, these types of changes to the aggravator are truly substantive, as they "give or define the right," as opposed to merely defining the procedures used to enforce the right. <u>Cf. Kuykendall v. Wheeler</u>, 890 S.W.2d 785, 787 (Tenn. 1994).

changed, and that such a change should not be applied to pending cases. I disagree however, that such a change has occurred with the (i)(2) aggravator and the 1998 amendments.

This case can be further distinguished from State v. Cazes, 875 S.W.2d 253 (Tenn. 1994) and State v. Brimmer, 876 S.W.2d 75 (Tenn. 1994). In those cases, the Court was faced with a change in the standard by which the State had to prove that the aggravators outweighed the mitigators. Because the burden of proof, if not a rule of substantive law in and of itself, always affects substantive rights, it makes sense that statutes altering the burden of proof should not be applied retroactively.

In this case, however, the 1998 amendment does not change any burden of proof, just as it does not change the substantive elements of the (i)(2) aggravator. Therefore, I conclude that neither Cazes nor Brimmer necessarily compels the conclusion that the 1998 amendments here cannot be applied to all pending cases.

Likewise, State v. Hutchison, 898 S.W.2d 161 (Tenn. 1994), is also distinguishable from this case in that Hutchison involved a substantive change in statutory and non-statutory mitigating circumstances.

Finally, I do not find the majority's citation of Powers to be particularly persuasive that the 1998 amendment is a substantive amendment. The Court's decision in Powers merely declared the fact "the 1998 amendment was inapplicable in this case because the offense was committed before the effective date of the amendment." It provided no analysis of why this proposition must necessarily be true, and the opinion cited only State v. Smith, 893 S.W.2d 908, 919 (Tenn.1994), for its holding.

Significantly, however, Smith involved fundamental changes to the burden of proof and the weighing of aggravating and mitigating circumstances, and the definition of the (i)(5) aggravating circumstance itself. As mentioned above, these changes are truly substantive in nature, and should not be applied retroactively. Accordingly, because I am of the opinion that the holding of Powers on this point cannot withstand a close analysis and because Smith is clearly distinguishable, I would overrule Powers to the extent that it holds that the 1998 amendment may not be given retroactive application.

*Significance of the Use of the Word "Shall"*

In finding a substantive change in Tennessee Code Annotated section 39-13-204(c), the majority also places emphasis on the General Assembly's use of the word "shall" as it is used in the phrases "shall be permitted" and "shall be used." Although the majority holds that this language substantively changes the (i)(2) aggravator, the majority is unclear as to precisely how this single word takes the statute "far beyond" a procedural change. Reading between the lines, however, I take the majority to mean that the word "shall" is a substantive change because it forces the trier of fact to consider details of the other offenses, whereas the jury before could not

6

consider this evidence.

If my interpretation of the opinion is correct, then I disagree that the use of the word "shall" carries the significance attributed to it by the majority. In my mind, it seems just as plausible, if not more so, that the General Assembly's use of the word "shall" was meant only to foreclose the following two possibilities: (1) that a trial court would not allow such evidence to be heard by the jury, thereby denying the jury a real opportunity to assign weight to the aggravator; and (2) that a jury may consider this evidence for purposes other than assigning weight to the aggravator.

Consider, for example, the possibilities presented if the word "may" had been used instead of "shall." In that case, the statute would read "either party *may* be permitted to introduce evidence concerning the facts and circumstances of the prior conviction. Such evidence *may* be used by the jury in determining the weight to be accorded the aggravating factor." Under this wording, questions would naturally arise as to when a party "may not" be permitted to introduce such evidence, and for what purposes (other than the one listed) this evidence could be used by the jury. It seems logical that the General Assembly recognized this possibility and sought to eliminate these concerns before the issues tied up the courts.

Rather than fundamentally changing the operation of the (i)(2) aggravator, as the majority suggests, this wording merely seems designed to prevent these types of issues from arising in the first instance. The use of the word "shall" does not (and should not) affect whether the jury finds the presence of the (i)(2) aggravator beyond a reasonable doubt, and it does not permit the introduction of new evidence to prove the (i)(2) aggravator beyond a reasonable doubt. Accordingly, I disagree that the use of the word "shall" compels any particular conclusion that the 1998 amendment was substantive in nature and could not be applied to all pending cases.

*Prospective Statutes*

With regard to the majority's argument that statutes are always presumed to operate prospectively in the absence of legislative intent to the contrary, I believe that the opinion has overstated the rule. It is true that the Court often applies an initial presumption that a statute applies prospectively only. However, this presumption is not conclusive, and this Court has recognized that an exception exists for remedial or procedural statutes, which are applied to cases pending at the time of enactment (save for constitutional concerns). See Kee v. Shelter Ins., 852 S.W.2d 226, 228 (Tenn. 1993) ("Generally statutes are presumed to operate prospectively and not retroactively. An exception exists, however, for statutes which are remedial or procedural in nature." (citations omitted)). Consequently, we do not state the entire rule of construction if we stop, as does the majority opinion, by stating only that a presumption of prospective application applies.

Indeed, one may suggest further that a presumption of *retroactivity* (not prospectivity) arises when the statute is procedural or remedial in nature. This is precisely the holding of

7

<u>Saylors v. Riggsbee</u>, 544 S.W.2d 609, 610 (Tenn. 1976), in which this Court stated plainly that "[r]emedial or procedural statutes apply retrospectively not only to causes of action arising before such acts become law, but to all suits pending when the legislation takes effect, *unless the legislature indicates a contrary intention or immediate application would produce an unjust result*." (emphasis added). According to <u>Saylors</u>—and contrary to the majority opinion—a presumption of retroactive application applies to remedial and procedural statutes. In my view, the 1998 amendment is clearly procedural and it is also remedial in that it was enacted to overrule this Court's decision in <u>State v. Bigbee</u>, 885 S.W.2d 797 (Tenn. 1994).

This presumption of retroactivity for procedural statutes makes sense, because were the majority's holding carried to the extreme and applied in other cases, the trial courts would be held hostage to debates over which procedural and evidentiary rules existed at the time of the offense. One may suppose that the desire to avoid these types of issues is one strong reason why we have the presumption that remedial or procedural statutes should apply to all cases pending at the time of enactment.

It is true that in the capital sentencing context, the Court has generally applied the rules in place at the time of the offense. However, at least with the cases relied upon in the majority opinion, the changes are generally substantive changes that should not be applied retrospectively. In other words, a complete application of the rules governing prospective/retroactive application of statutes does little, if any, damage to the Court's previous holdings in the capital context. I disagree with the majority's position that the "presumption of prospective application" is entitled to any great weight in the determination of this case.

*Relevance of Tennessee Code Annotated section 39-11-112*

Finally, regarding the import of Tennessee Code Annotated section 39-11-112, I disagree that this statute shows that the legislature intended for the 1998 amendment to apply prospectively only. Neither <u>Brimmer</u> (upon which the majority relies) nor the majority opinion notes that the plain language of section 39-11-112 refers only to an amendment that affects "offenses" and the "prosecution" of offenses. Plainly, the capital sentencing procedures in Tennessee Code Annotated section 39-13-204 are not "offenses," and thus the more reasonable interpretation of the statute may be that it does not apply to those sentencing procedures. <u>See</u> <u>Givens v. Mullikin</u>, 75 S.W.3d 383, 413 (Tenn. 2002) (stating that the Court "will not construe statutory language to unduly expand it beyond its plain and obvious import"). I would note that <u>Brimmer</u> does not necessarily prevent this Court from correcting its holding regarding the legislature's intent, at least when that prior holding is contrary to the statute's plain language. <u>See</u> <u>Limbaugh v. Coffee Med. Ctr.</u>, 59 S.W.3d 73, 81-84 (Tenn. 2001) (overruling prior interpretation of the GTLA that was not consistent with the statute's plain language).

In sum, I conclude that the 1998 amendment is procedural and remedial and that it does not deny the defendant a substantial right. Accordingly, the amendment is not an ex post facto law and should be given retrospective application.

8

Comparative Proportionality Review

Because I, unlike the majority, find that the trial court did not err in allowing the introduction of evidence regarding the prior violent felonies, I must address the issue of proportionality of the death sentence as it applies to the defendant in this case.

Pursuant to Tennessee Code Annotated section 39-13-206(c)(1), this Court conducts a comparative proportionality review of every death sentence "for the purpose of determining whether the death penalty is unacceptable in a particular case because it is disproportionate to the punishment imposed on others convicted of the same crime." State v. Hall, 8 S.W.3d 593, 604 (Tenn. 1999). We apply the precedent-seeking approach, in which we compare a particular case with other cases in which the defendants were convicted of the same or similar crimes. State v. Henderson, 24 S.W.3d 307 (Tenn. 2000). We conduct this comparison by examining the facts of the crimes, the characteristics of the defendants, and the aggravating and mitigating factors involved. See State v. Bland, 958 S.W.2d 651, 664 (Tenn. 1997).

In addition to comparing the backgrounds of the various defendants and the aggravating and mitigating factors applicable to the various cases, other factors relevant to the process of identification and comparison of similar cases include: (1) the means of death; (2) the manner of death, e.g., violent or torturous; (3) the motivation for the killing; (4) the place of death; (5) the similarity of the victims' circumstances including age, physical and mental conditions, and the victims' treatment during the killing; (6) the absence or presence of premeditation; (7) the absence or presence of provocation; (8) the absence or presence of justification; and (9) the injury to and effects on surviving victims. Hall, 8 S.W.3d at 604; Bland, 958 S.W.2d at 667. Also relevant when comparing the various cases are: (1) the defendant's prior criminal record or prior criminal activity; (2) the defendant's age, race, and gender; (3) the defendant's mental, emotional or physical condition; (4) the defendant's involvement or role in the murder; (5) the defendant's cooperation with authorities; (6) the defendant's remorse; (7) the defendant's knowledge of the helplessness of the victim; and (8) the defendant's capacity for rehabilitation. Hall, 8 S.W.3d at 604-605; Bland, 958 S.W.2d at 667.

Applying these factors, the proof in this case reflects that the victim was a 78-year-old Caucasian female who was murdered in a parking lot as she was returning to her car. The victim was stabbed repeatedly while being raped from behind. She had multiple stab wounds to her back and side, piercing her heart, liver and lungs, as well as defensive stab wounds to her hand; she also had a torn vagina. The medical examiner testified that she suffered immediate pain and that death was not instantaneous. The apparent motivation was initially to snatch the victim's purse, however, when the victim addressed the defendant as "son," the defendant told her, "I'll give you your damn son," and proceeded to rape the victim. During the course of the rape, the victim told the defendant that she had never had sex before.

The defendant, a then thirty-year-old Caucasian male, had a history of criminal activity

9

including convictions for robbery and first-degree murder. He had escaped from prison where he had been serving a life sentence for murder. The defendant cooperated with the police to the extent that after initially giving the police a statement under the alias of "Otis Smith," he eventually confessed to the murder and rape. After confessing, the defendant told police that he needed help mentally and psychologically. As mitigating evidence, the defendant presented prrof of his neglect and abuse as a child and his history of mental illness which included deficits in impulse and rage control.

My proportionality review reveals other cases, though not identical, that contain many circumstances that are similar to the defendant's crime and circumstances. For example, in State v. Cazes, 875 S.W.2d 253 (Tenn. 1994), a jury imposed, and this Court upheld, a sentence of death for a defendant who murdered an elderly woman during the commission of a rape. The victim was found on the floor of her bedroom, naked and face down. She had scrape marks on her thighs and vagina, a bite mark on her breast, and evidence of penetration at or after the time of death. Death was caused by multiple blows to the head with a blunt object. The bedroom was ransacked but nothing of value was missing from the home. The jury found three aggravating circumstances: that the defendant was previously convicted of one or more violent felonies; that the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind; and that the murder was committed while the defendant was engaged in committing a felony. While the jury found no mitigating circumstances sufficient to outweigh the aggravating circumstances, proof was put on during the sentencing phase of trial regarding the defendant's psychological problems including chemical dependancy and multiple drug abuse. There was also evidence of impulse control deficits. The defendant stated that he was extremely drunk on the night in question and did not remember anything.

In State v. Bush, 942 S.W.2d 489 (Tenn. 1997), the defendant was sentenced to death for the murder of an elderly woman committed during a robbery. The victim died as a result of being stabbed forty-three times. The wounds extended down the left side of her face, down the back of her neck, across her shoulders, and down her back. Prior to being stabbed, the victim had been beaten by a stick and been knocked to the floor. The defendant, a then eighteen-year-old male known by the victim, confessed to the murder. Unlike Odom, the defendant in Bush did not have any significant history of prior criminal activity.

In State v. Smith, 893 S.W.2d 908 (Tenn. 1994), the death penalty was upheld for a defendant who murdered and raped an elderly widow during the course of a robbery. The victim was beaten over her entire body, her throat was cut twice, and she was then placed in several inches of water in the bathtub. She had also been tied up and raped. The defendant denied involvement to the police, although he admitted the killing to several acquaintances. He had a history of mental illness as well as questionable borderline mental retardation.

The Court of Criminal Appeals cited to numerous cases in which the death penalty was upheld for a murder committed during the course of a robbery. See State v. Chalmers, 28 S.W.3d 913 (Tenn. 2000); State v. Hall, 8 S.W.3d 593 (Tenn. 1999); State v. Middlebrooks, 995

S.W.2d 550 (Tenn. 1999); State v. Smith, 993 S.W.2d 6 (Tenn. 1999); State v. Burns, 979 S.W.2d 276 (Tenn. 1998); State v. Howell, 868 S.W.2d 238 (Tenn. 1993); State v. Van Tran, 864 S.W.2d 465 (Tenn. 1993); State v. Harries, 657 S.W.2d 414 (Tenn. 1983); State v. Coleman, 619 S.W.2d 112 (Tenn. 1981). On appeal to this Court, the State cites to other similar cases, all of which involve vicious attacks on helpless, elderly victims. See State v. Barber, 753 S.W.2d 659 (Tenn. 1988); State v. McNish, 727 S.W.2d 490 (Tenn. 1987); State v. Harbison, 704 S.W.2d 314 (Tenn. 1986); State v. Cone, 665 S.W.2d 87 (Tenn. 1984); State v. Melson, 638 S.W.2d 342 (Tenn. 1982). The defendant does not cite to or discuss any cases, but simply requests that this Court find that the sentence is disproportionate to the penalty imposed in similar cases.

The defendant in this case senselessly attacked, raped and murdered a helpless, elderly woman. He had prior convictions for violent felonies, including a conviction for first degree murder, and he was escaped from the prison sentence for the latter. When considering all of the circumstances of the present crime, as compared to the circumstances in other cases, I conclude that the death sentence was neither disproportionate nor arbitrarily applied.

## Conclusion

In summary, I agree with the trial court and the unanimous Court of Criminal Appeals that the 1998 amendment to Tennessee Code Annotated section 39-13-204(c) was properly applied to the defendant's re-sentencing. Because the amendment is procedural and remedial and does not substantively disadvantage the defendant, it is not an ex post facto law and should be applied retrospectively. Moreover, I conclude that the defendant's sentence of death was neither arbitrary nor disproportionate, and I would therefore affirm the Court of Criminal Appeals.

_____
WILLIAM M. BARKER, JUSTICE

11