**Sammy MILLER, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Supreme Court of Tennessee.

April 2, 1979.

Rehearings Denied Aug. 10, 1979.

Second Rehearing Denied Oct. 22, 1979.

H. H. Gearinger, Chattanooga, for appellant.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, Gary Gerbitz, Dist. Atty. Gen., Chattanooga, for appellee.

## OPINION

HENRY, Chief Justice.

In this criminal action the defendant was convicted of murder in the first degree and sentenced to death by electrocution. It comes before us on direct appeal pursuant to § 39–2406, T.C.A.

We affirm so much of the jury verdict and the judgment of the court thereon as found defendant guilty of murder in the first degree, but modify the sentence imposed and adjudged by reducing it to life imprisonment.

### I.

### *Factual Background*

This was a brutal and senseless murder. A full narration of the facts would serve no useful purpose. Suffice it to say that on April 7, 1976, defendant, after participating in robbing Randall Ray West, a seventeen year-old boy, placed him in the trunk of his own vehicle, started the engine, drove the vehicle into Lake Chickamauga, and jumped clear leaving West to drown, while pleading for his life and pounding upon the trunk of the car in a frantic effort to escape. The automobile sank into twenty-five feet of water.

We have reviewed the record and find that defendant was convicted upon legally sufficient evidence in a fair and error-free trial. Without hesitation we affirm the conviction.

### II.

Appellant's primary contention is that he was tried under Chapter 51, Public Acts of 1977, which became effective April 11, 1977, for a crime committed on April 7, 1976. Therefore, he contends that his conviction was *ex post facto* under Article 1, Section 10 of the Constitution of the United States.

The holding of the Supreme Court of the United States in *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), irrespective of our personal views as to its correctness, compels us to overrule this contention.

■ We are bound by the interpretation given to the *United States Constitution* by the Supreme Court of the United States. This is fundamental to our system of federalism. The full, final, and authoritative responsibility for the interpretation of the federal constitution rests upon the Supreme Court of the United States. This is what the Supremacy Clause means. However, as to Tennessee's Constitution, we sit as a court of last resort, subject solely to the qualification that we may not impinge upon the minimum level of protection established by Supreme Court interpretations of the federal constitutional guarantees. But state supreme courts, interpreting state constitutional provisions, may impose higher standards and stronger protections than those set by the federal constitution. It is settled law that the Supreme Court of a state has full and final power to determine the constitutionality of a state statute, procedure, or course of conduct with regard to the state constitution, and this is true even where the state and federal constitutions contain similar or identical provisions. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Jankovich v. Indiana Toll Road Commission,* 379 U.S. 487, 85 S.Ct. 493, 13 L.Ed.2d 439 (1965). Thus, although state courts cannot interpret their state constitution so as to *restrict* the protections afforded by the federal constitution, as interpreted by the United States Supreme Court, they may *expand* protections on the basis of a textually identical state constitutional provision.

If this were not true the frictions of federalism would be fierce and frustrating and state supreme courts would be reduced to mere conduits through which federal edicts would flow.

The Supreme Court of Hawaii, in *State v. Kaluna,* 520 P.2d 51 (1974) stated the principle eloquently and accurately:

> In our interpretation of the United States Constitution, or course, we are bound to follow applicable pronouncements by the United States Supreme Court.

. . . . .

However, as the ultimate judicial tribunal in this state, this court has final, unreviewable authority to interpret and enforce the Hawaii Constitution. We have not hesitated in the past to extend the protections of the Hawaii Bill of Rights beyond those of textually parallel provisions in the Federal Bill of Rights when logic and sound regard for the purposes of those protections have so warranted. 520 P.2d at 58.

We do not accept the holding of *Dobbert* as a matter of Tennessee constitutional law.

While appellant assigns no error based on Tennessee's pertinent constitutional provisions, we do not think that this constitutional court of last resort can ignore them when exercising the awesome responsibility of determining whether a Tennessee citizen lives or dies.

We are solemnly enjoined by § 40–3409, T.C.A., that "[n]o assignment of error or joinder in error is necessary in criminal cases taken to the Supreme Court, but the court shall render such judgment on the record as the law demands."

In *Manning v. State,* 500 S.W.2d 913 (Tenn.1973), this Court rejected as untenable the contention that Tennessee appellate courts could not consider an issue that was not raised during the trial or by assignment of error on appeal. Quoting from *Silber v. United States,* 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962), the Court approved the following language:

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise affect the fairness, integrity, or public reputation of judicial proceedings. 500 S.W.2d at 914

The Court went on to state that "the right to act on unassigned error exists where not 'to do so would be nothing less than knowingly perpetrating a palpable injustice.'" *Id.* More recently, we unanimously held in *Adams v. State,* 547 S.W.2d 553, 557 (Tenn. 1977), that this Court "is bound to consider any errors in the record, *whether there has*

*been an assignment or not."* (Emphasis supplied).

■ The gravity of this case compels us to consider Tennessee's Constitution and statutes. Article I, Section 11 of our Constitution provides:

That laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of a free Government; wherefore no *Ex post facto* law shall be made.

■ This section denouncing prejudicial retrospective change, in our view, is sufficiently broad to proscribe the application of a statute fixing punishment in excess of that provided by a law in effect at the time of the commission of an offense.

In *State v. Rowe*, 116 N.J.L. 48, 181 A. 706 (1935), the Court lays down four broad and generally "accepted classifications of *ex post facto* laws," as follows:

1. A law which provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent.

2. A law which aggravates a crime or makes it greater than when it was committed.

3. A law that changes punishment or inflicts a greater punishment than the law annexed to the crime when it was committed.

4. A law that changes the rules of evidence and receives (sic) less or different testimony than was required at the time of the commission of the offense in order to convict the offender. 181 A. at 709.

Among other classifications added by the Court was:

Every law which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage, 181 A. at 710.

■ The *Rowe* Court relied upon *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648

(1798) for the first four characteristics. There Justice Chase laid down the time-honored test. The application of these commonly accepted principles precludes a sentence of death by electrocution in this case.

### III.

In *State v. Dixon*, 530 S.W.2d 73 (Tenn. 1975), Mr. Justice Cooper, writing for the Court, recognized that "[a]n unconstitutional act designed to amend or supersede an existing law does not repeal or change the former valid act but leaves it in full force and effect." 530 S.W.2d at 74. In *Dixon* the murder was committed and the defendant was tried and convicted under a statute that was subsequently found to be unconstitutional because of caption difficulties. The Court upheld the conviction because the former law proscribing first degree murder was left intact. Since the indictment conformed to the requirements of the prior valid statute the conviction was valid absent other prejudicial error.

In *Dixon* the trial court erroneously instructed the minimum sentence under the unconstitutional statute. Since the jury's verdict indicated that it did not intend to impose the minimum sentence, this Court ruled that the error was harmless. In the instant case, however, Miller is prejudiced by the erroneous instruction since he is subjected to the death penalty, which could not have been applied under the statute in effect when the crime was committed.

Finally, we think that the holding of the Court in *Collins v. State*, 550 S.W.2d 643 (Tenn.1977), requires a reversal to the extent of the sentence of death by electrocution.

In *Collins*, responsive to various 1976 decisions [1] of the Supreme Court of the United States, we declared Section 3, Chapter 462 of the Public Acts of 1974, as codified in Section 39–2405, 2406, T.C.A. to be unconstitutional.

1. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859; *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944; *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974; *Williams v. Oklahoma*, 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215.

We noted that prior law (specifically Section 10771, Williams Tennessee Code, and Section 39–2405, T.C.A.), provided that persons convicted of murder in the first degree "shall suffer death by electrocution, or be imprisoned for life or over twenty (20) years, as the jury may determine", and that under then section 39–2406 the jury might fix the punishment at death, but "if they are of opinion that there are mitigating circumstances," the punishment might be fixed at some period over twenty years. We then held that those pre-1973 statutes,[2] to the extent of the death penalty provisions, were invalid. 550 S.W.2d at 646, 647. This operated to leave prior valid acts in full force and effect. *Dixon, supra.*

*Collins* effectively operated to invalidate all death penalty provisions of acts going back to Chapter 181 of the Public Acts of 1915. Section 1 of that act provided, in pertinent part:

That the death penalty as punishment for crime be, and the same is hereby abolished, and in lieu thereof . . . shall be the punishment of life imprisonment [except for the crimes of rape and convicts serving life terms convicted of any capital crime.]

 Thus the legally effective punishment for first degree murder on the date of the crime committed by appellant was life imprisonment, as there was no constitutional procedure for the infliction of the death penalty at the time of the crime. The statute enacted subsequent to the crime may not be applied retroactively to him.

### IV.

We hold that so much of the verdict of the jury and judgment of the court thereon as imposed upon appellant a sentence of death by electrocution is invalid as being in contravention of Article I, Section 11 of the Constitution of the State of Tennessee.

We affirm the finding of guilt and reduce the sentence imposed to life imprisonment.

COOPER and BROCK, JJ., concurring.

HARBISON, J., dissents with opinion.

FONES, J., concurs in dissenting opinion.

### APPENDIX

#### SEQUENCE OF EVENTS

6–22–72 *Furman v. Georgia* decided

5– 8–73 Chapter 192, Acts of 1973 became effective

2– 4–74 Chapter 192, Acts of 1973 declared unconstitutional in *State v. Hailey,* 505 S.W.2d 712 (Tenn.1974)

2–27–74 Chapter 462, Acts of 1974, providing a mandatory death penalty for murder I, became effective

4– 7–76 *Miller murdered West* (mandatory death penalty was in effect)

7– 2–76 *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859; *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913; *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929; *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944; and *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 decided by Supreme Court of the United States.

7– 6–76 *Williams v. Oklahoma,* 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 decided.

Note: These cases alerted the bench and bar that a mandatory death penalty violated the Fifth and Fourteenth Amendments to the Constitution of the United States.

8– 5–76 *Miller arrested*

9–22–76 *Miller indicted* (For all practical purposes, Tennessee's mandatory death penalty had been obliterated)

1–24–77 *Collins v. State,* 550 S.W.2d 643 (Tenn.1977) decided. This decision was predicated wholly on the Federal Constitution.

2– 8–77 Governor commuted all death row prisoners

4–11–77 Chapter 51, Public Acts of 1977, the present death penalty law, Sec. 39–2402, 2404 and 2406 became effective when passed over the Governor's veto.

5– 2–77 Petition to rehear in *Collins* was overruled

12– 8–77 Opening date of trial

12– 9–77 *Miller Convicted of Murder I and given death penalty*

This was:

1 year and 8 months after the crime
1 " " 4 " " " arrest

---

**2.** Chapter 192, Public Acts of 1973, was declared unconstitutional in *State v. Hailey,* 505 S.W.2d 712 (Tenn.1974).

1 " " 5 " " " *Gregg*, etc.
1 " " 2 " and 17 days after the
 indictment
10½ months after *Collins*

HARBISON, Justice, dissenting.

I respectfully dissent, particularly from that portion of the majority opinion which recognizes but refuses to follow and to apply the holding of the Supreme Court of the United States in *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

In that case the Supreme Court of the United States, in a six-to-three decision, construed the ex post facto provisions of the United States Constitution fully and authoritatively. The majority of this Court has seen fit to accept the rationale of the dissenting opinion, rather than the majority opinion of that Court, and has accepted arguments advanced in this case which were considered in depth and expressly rejected by the United States Supreme Court.

The Constitution of Tennessee has neither been cited, briefed nor argued in this case. I think that it is an unfortunate development in constitutional law for the Court, *sua sponte*, to conclude that the term "ex post facto" has a different meaning in the Constitution of Tennessee from the identical words used in the Constitution of the United States. Heretofore, the courts of this state, in discussing ex post facto laws, have cited and relied upon interpretations of Article I, Section 10, of the United States Constitution, and there has never been the slightest suggestion that the provisions of the Tennessee Constitution were any different in content, scope and meaning from those in the federal constitution. *See Stinson v. State*, 208 Tenn. 159, 344 S.W.2d 369 (1961); *Davis v. Beeler*, 185 Tenn. 638, 207 S.W.2d 343 (1947).

Implicit in the majority opinion is a conclusion that the 1977 statute, under which petitioner was brought to trial, in some way "enhanced" or "increased" the punishment for first-degree murder. That statute, rather than making the death penalty for first-degree murder mandatory, made it discretionary and expressly authorized the trier of fact to consider specific aggravating circumstances and any and all mitigating circumstances which the accused might wish to present. In an identical situation, the Supreme Court of the United States in *Dobbert v. Florida, supra*, held that there was no enhancement of punishment in such a new statute, but that the new statute was basically procedural and tended to ameliorate, not to enhance, the punishment prescribed in an earlier mandatory death penalty statute.[1]

There is not the slightest suggestion in the majority opinion that *Dobbert v. Florida, supra*, can be distinguished, in any constitutional sense, from the instant case. The "sequence of events" set forth in the appendix to the majority opinion is almost identical to that which occurred in Florida, as outlined in the majority opinion in *Dobbert*. There the murder was committed several months before an existing mandatory death penalty was held invalid. A new statute was enacted subsequently, and the accused was brought to trial thereunder. Holding that there was no ex post facto application of the new statute, the Supreme Court of the United States rejected the contention, accepted by the majority here, that there was no "valid" death penalty "in effect" on the date of the crime—and the implicit notion contained in such contention that a criminal, somehow, acquires a constitutional "right" to commit first-degree murder and be immunized from any power of the state later to subject him to the death penalty.

Responding to the argument that the mandatory death penalty contained in the statutes at the time the murder was committed could not be enforced, and that, therefore, a later death penalty provision

---

1. In the present case the petitioner made no attempt to prove any mitigating circumstances at the sentencing hearing.

could not be applied to the criminal offense, the majority of the Supreme Court stated:

"But this sophistic argument mocks the substance of the *ex post facto* clause. Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability which the State ascribed to the act of murder." 432 U.S. at 297, 97 S.Ct. at 2300.

Whether Tennessee does or does not have a death penalty is a matter to be determined by the duly elected representatives of the people of this state. Consistently since 1919, the General Assembly has provided for the death penalty for first-degree murder. The experiment attempted in 1915, abolishing the death penalty, was short-lived. Regardless of our views as to the desirability or effectiveness of the death penalty, it is the General Assembly which must make the policy for the state on this subject. In my opinion, that body has spoken in clear, decisive terms and has enacted a statute which is not vulnerable to the ex post facto or retroactivity arguments advanced by the majority in this case.

It must be remembered, after all, that we are dealing with first-degree murder, one of the highest crimes against society. When the unspeakably brutal murder involved herein was committed by the petitioner, the penalty prescribed by the General Assembly of this state was death by electrocution, and that penalty was mandatory in all cases of first-degree murder. The 1977 statute, under which petitioner was tried, made the penalty discretionary. The same conduct was proscribed in both statutes, however, and the definition of first-degree murder, insofar as pertinent to this case, was not changed by the 1977 legislation.

Every contention advanced by the petitioner in this case was thoroughly and carefully considered by the Supreme Court of the United States in *Dobbert v. Florida, supra,* and was rejected. Similar arguments were rejected by the Supreme Court of Virginia in the recent case of *Smith v. Commonwealth,* 219 Va. 455, 248 S.E.2d 135 (1978).

I cannot concur in or approve the statement contained in the majority opinion that this Court will not "accept the holding of *Dobbert* as a matter of Tennessee constitutional law."

I have reviewed the record in this case in detail. After considering all of the assignments of error made by counsel appointed to represent the petitioner, I would affirm both the conviction and the sentence imposed pursuant thereto.

I am authorized to state that Mr. Justice Fones joins in this dissenting opinion.

## MEMORANDUM ON PETITIONS TO REHEAR

Both Miller and the State have filed petitions to rehear. The State asks us to reconsider our determination that application of the 1977 Act to Miller violates the *ex post facto* provision of the Tennessee Constitution. This Court labored long and laboriously in a concentrated effort to reconcile conflicting internal views. We decline to accept the State's invitation. The majority continues to be of the opinion that the penalty of death by electrocution is invalid under Article I, Section 11 of the Constitution of Tennessee. Justices Harbison and Fones continue to adhere to a contrary view.

Miller argues that the Court should have remanded the case and allowed a jury to fix his punishment for a term of years between twenty years and life imprisonment. This claim is predicated upon the original disposition ordered in *Collins v. State,* 550 S.W.2d 643 (Tenn.1977).

The first opinion in *Collins* applied the rule that the invalidation of a statute operates to revive prior valid acts. *See State v. Dixon,* 530 S.W.2d 73 (Tenn.1975). Then we looked briefly to Chapter 5 of the Acts of 1919, which recited, *inter alia*:

When any person is convicted of the crime of murder in the first degree, or as an accessory before the fact of such a crime, it shall be the duty of the Jury convicting him in their verdict to fix his punishment, which punishment shall be death in the mode prescribed by law for the infliction of the death penalty in capital cases, or the Jury may, if they are of opinion that there are mitigating circumstances, fix the punishment at imprisonment in the penitentiary for life, or for some period over twenty years.

We then observed that this statute "did not prescribe sufficiently detailed procedures to accomplish 'controlled discretion' by the jury in the imposition of the death penalty . . . ." Therefore, we declared the death penalty provisions contained therein void. This, however, in the view of the Court, affected only the death penalty and not the remaining penal provisions of the Act. Hence, in the original opinion, we remanded to the trial court, under the 1919 Act, for the assessment of punishment ranging from twenty years to life imprisonment.

 We note, upon examination of Chapter 5 of the Acts of 1919, that it contains no severability clause. In the absence of such a clause the unconstitutional death penalty provision may not be elided from the Act. The doctrine of elision is not favored in the law, *Armistead v. Karsch*, 192 Tenn. 137, 237 S.W.2d 960 (1951). There is also a presumption arising from the absence of a severability clause that the Legislature would not have passed the enactment without the objectionable matter. *Maury County v. Porter*, 195 Tenn. 116, 257 S.W.2d 16 (1953). In order for the Court to elide, we must be able to say that the statute would have been passed without the omitted provision. *Phillips v. West*, 187 Tenn. 57, 213 S.W.2d 3 (1952). The brevity of the statute and the fact that the penal provisions are so closely related and interdependent make it unwise and untenable for us to speculate that the Legislature would have passed one provision without the other.

The result is that Chapter 5 of the Acts of 1919 is unconstitutional. This validates the assertion contained in the main opinion that "the legally effective punishment for first degree murder on the date of the crime . . . was life imprisonment," pursuant to ch. 181 of the 1915 Act.

The petitions to rehear are respectfully overruled.

BROCK, C. J., and COOPER, J., concurring.

FONES and HARBISON, JJ., dissenting.

### MEMORANDUM ON SECOND PETITION TO REHEAR

PER CURIAM

The Second Petition to Rehear is respectfully denied.

All members of the Court adhere to their original opinions.