IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 25, 2005

## LUTHER E. FOWLER v. HOWARD CARLTON, Warden

**Appeal from the Criminal Court for Johnson County
No. 4331     Robert E. Cupp, Judge**

---

**No. E2004-01346-CCA-R3-HC  - Filed March 21, 2005**

---

The petitioner, Luther E. Fowler, appeals from the Johnson County Criminal Court's summary dismissal of his petition for *habeas corpus* relief.  We affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Luther E. Fowler, *Pro Se*.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; and Joe C. Crumley, Jr., District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The petitioner, Luther E. Fowler, filed a petition for *habeas corpus* relief in which he attacked his 1992 conviction of felonious assault with intent to commit first degree murder, which resulted from a charge on a 1988 offense.  The petitioner claimed that his 40-year sentence as a multiple offender imposed pursuant to the 1989 Sentencing Act was illegal.

### I.  Background.

The petitioner was originally convicted in 1992 and received a Range III sentence of 60 years; however, this court reversed the sentence and remanded for a new sentencing hearing.  *See State v. Luther E. Fowler*, No. 03C01-9207-CR-00249 (Tenn. Crim. App., Knoxville, July 27, 1993) (*Fowler I*).[1]   Upon remand, the trial court refused to consider the petitioner's prior convictions

---

[1]According to the recitation of the facts of the conviction offense that appeared in *Fowler I*, the petitioner confronted the victim in a bar, "slapped [him] in the face and then shot him in the chest."  *Fowler I*, slip op. at 4.  The

(continued...)

because the state did not properly prove them at the first sentencing hearing, and the state appealed. Thereafter, this court again reversed and remanded, after concluding that the trial court erred in prohibiting the state from establishing the petitioner's sentencing range. *See State v. Luther E. Fowler*, No. 03C01-9409-CR-00334 (Tenn. Crim. App., Knoxville, Sept. 19, 1995) (*Fowler II*). Apparently, at the ensuing sentencing hearing, the trial court imposed a Range II, multiple-offender sentence of 40 years. No appeal followed, but the petitioner filed a post-conviction petition and appealed from the denial of relief. *See Luther E. Fowler v. State*, No. 03C01-9711-CR-00509 (Tenn. Crim. App., Knoxville, July 30, 1999) (*Fowler III*).

The petitioner was *convicted* of assault with intent to commit first degree murder pursuant to former Tennessee Code Annotated section 39-2-103, which provided:

> (a) Whoever shall feloniously and with malice aforethought assault any person, with intent to commit murder in the first degree, . . . though death not ensue, shall, on conviction, be imprisoned in the state penitentiary for not less than five (5) nor more than twenty-five (25) years.
>
> (b) If bodily injury occurs as a result of such an assault in violation of subsection (a), the punishment shall be a determinate sentence of confinement in the state penitentiary for life or for a period of not less than five (5) years.

Tenn. Code Ann. § 39-2-103(a), (b) (1982) (repealed 1989); *see Fowler I*, slip op. at 2. Pursuant to the Criminal Sentencing Reform Act of 1982, "a life sentence shall be presumed to be sixty (60) years." Tenn. Code Ann. § 40-35-109(d)(1) (Supp. 1988) (repealed 1989). The 1982 Sentencing Act also provided that a standard, Range I offender would be sentenced to a term of imprisonment "not less than the minimum sentence established by law, and not more than the minimum sentence plus one-half (½) of the difference between the maximum sentence and the minimum sentence." *Id.* § 40-35-109(a) (repealed 1989). On the other hand, the 1982 Act created a persistent-offender category for those offenders who received either two or more felony convictions within the five years immediately preceding the instant offense, or four or more felony convictions within 10 years immediately preceding the instant offense. *Id.* § 40-35-106(a) (repealed 1989). A persistent offender was to be sentenced within Range II, for which the court would impose a sentence "not less than the minimum sentence plus one-half (½) of the difference between the maximum sentence and the minimum sentence, and not more than the maximum sentence as provided by law." *Id.* § 40-35-109(b) (repealed 1989).

Though convicted via a pre-1989 penal statute, the petitioner was *sentenced* pursuant to the Criminal Sentencing Reform Act of 1989. Applying the 1989 Act's conversion tables set forth

---

[1](...continued)
gunshot wound necessitated the removal of the victim's gall bladder. *Id.*

in Code section 40-35-118, the offense of assault with intent to commit first degree murder equates to a Class A felony offense in the 1989 Act. *Id.* § 40-35-118. As such, the broad gamut of sentencing for Class A felonies is a minimum of 15 years and a maximum of 60 years. *Id.* § 40-35-112(a)(1), (c)(1).

In its motion to dismiss the current petition for *habeas corpus* relief, the state urged dismissal on the ground that the petitioner's claim that he should have been sentenced pursuant to the 1982 Sentencing Act, rather than the 1989 Act, "would require the introduction of proof beyond the face of the record or judgment."

On May 11, 2004, the *habeas corpus* court held that the trial court had jurisdiction to impose the 40-year sentence pursuant to the 1989 Sentencing Act and dismissed the petition. The petitioner filed a timely notice of appeal. *See* Tenn. R. App. P. 3(b), 4.

## II. Appellate Claims.

In his appellate brief, the petitioner claims that, pursuant to the Criminal Sentencing Reform Act of 1982, which was effective at the time of his 1988 offense, he would have received a sentence in the range of five to 32 years and would have been eligible for release after serving 30 percent of the sentence. He based his calculations upon the 1982 Act's provisions for computing prior convictions in establishing a range and a release eligibility date. He states that his Range II 1996 sentence of 40 years pursuant to the Criminal Sentencing Reform Act of 1989 results in an *ex post facto* application of punishment and violates the federal and state constitutions.

In response, the state posits that the defendant has failed to state a claim for *habeas corpus* relief. Additionally, the state argues that the petitioner's claim is dependent upon facts that do not appear on the face of the record. The state argues that the present 40-year sentence was authorized by both the 1982 and the 1989 Acts. As we shall explain, we agree with the state's argument that *habeas corpus* relief is not available to the petitioner.

## III. Legal Principles.

### A. Standard of Review.

The legal issues raised in a *habeas corpus* proceeding are questions of law, and our review of questions of law is *de novo*. *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000) ("[W]hether to grant the petition [for *habeas corpus* relief] is a question of law that we review de novo."); *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997) (question of law reviewed on appeal *de novo* ).

### B. Scope of the Writ of *Habeas Corpus.*

*Habeas corpus* relief in Tennessee is available only when the aggrieved party's conviction is void or the sentence has expired. *See Archer v. State*, 851 S.W.2d 157, 164 (Tenn.

1993). The burden of proving that the judgment is void rests with the *habeas corpus* petitioner. *Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn. 2000). The petitioner in the present case claims that his sentence, and hence his conviction judgment, is void.

A void conviction is one which strikes at the jurisdictional integrity of the trial court. *Id.*; *see State ex rel. Anglin v. Mitchell*, 575 S.W.2d 284, 287 (Tenn. 1979); *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994). Because in this case the trial court apparently had jurisdiction over the *actus reus*, the subject matter, and the person of the petitioner, the petitioner's jurisdictional issue is limited to the claim that the court was without authority to enter the judgment. *See Anglin*, 575 S.W.2d at 287 ("'Jurisdiction' in the sense here used, is not limited to jurisdiction of the person or of the subject matter but also includes lawful authority of the court to render the particular order or judgment whereby the petitioner has been imprisoned."); *see also Archer*, 851 S.W.2d at 164; *Passarella*, 891 S.W.2d at 627.

The invalidity of the sentence itself, as well as the broader invalidity of the conviction, results in a void judgment and is a sufficient basis for *habeas corpus* relief. *See Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000) (a void sentence, as well as a void conviction, may result in a void judgment and be the subject of a *habeas corpus* proceeding). For an illegal sentence to support a claim for *habeas corpus* relief, however, the illegality of the sentence must be egregious to the point of voidness. *Cox v. State*, 53 S.W.3d 287, 292 (Tenn. Crim. App. 2001), *overruled on other grounds by Michael R. Moody v. State*, No. E2000-01131-SC-R11-PC, __ S.W.3d __, slip op. at 3 (Tenn., Knoxville, Feb. 22, 2005). Thus, mere clerical errors in the terms of a sentence may not give rise to a void judgment. *See, e.g., Ronald W. Rice v. David Mills*, No. E2003-00328-CCA-R3-PC, slip op. at 3-4 (Tenn. Crim. App., Knoxville, Aug. 19, 2003) (trial court erred in designating on the judgment form that the petitioner was sentenced under the 1982 sentencing law, when the 1989 law applied to Rice's case; however, the 1989 law was actually applied, and the resulting sentence was "not void and the petitioner [was] not entitled to *habeas corpus* relief"), *perm. app. denied* (Tenn. 2004).

Our supreme court in *McLaney v. Bell*, 59 S.W.3d 90 (Tenn. 2001), said that an "illegal" sentence equates to a "jurisdictional defect." *Id.* at 92. The burden of proving that a judgment is void "entails showing that the jurisdictional defect appears in the record of the original trial, thereby creating a void judgment." *Id.* at 93. The petitioner must show via the face of the judgment or the record of the proceedings upon which the judgment is rendered that the court lacked jurisdiction to sentence the defendant. *Stephenson*, 28 S.W.3d at 911. In contrast, "'[a] voidable conviction or sentence is one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity.'" *McLaney*, 59 S.W.3d at 93 (quoting *Taylor v. State*, 995 S.W.2d 78, 93 (Tenn. 1999)). "[N]o evidentiary hearing shall justify the issuance of the writ. Accordingly, where the allegations in a petition for writ of [*habeas corpus*] do not demonstrate that the judgment is void, a trial court may correctly dismiss the petition without a hearing." *Id.* (citation omitted).

-4-

C.  The Scope of *Ex Post Facto* Provisions.

Constitutional provisions prohibiting the *ex post facto* application of laws address "[e]very law that makes an action done before the passing of the law, and which was innocent when done, criminal[,] and punishes such action[; e]very law that aggravates a crime, or makes it greater than it was, when committed[; and e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. 386, 390 (1798); *see* U.S. Const. art. I, § 10; *see also* Tenn. Const. art. I, § 11 ("[L]aws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal are contrary to the principles of a free Government; wherefore no Ex post facto law shall be made.").  The Tennessee Supreme Court has enumerated "five broad classifications" of *ex post facto* laws:

> "1.  A law which provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent.
>
> 2. A law which aggravates a crime or makes it greater than when it was committed.
>
> 3. A law that changes punishment or inflicts a greater punishment than the law annexed to the crime when it was committed.
>
> 4. A law that changes the rules of evidence and receives [sic] less or different testimony than was required at the time of the commission of the offense in order to convict the offender.
>
> 5. Every law which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage."

*State v. Pearson*, 858 S.W.2d 879, 882 (Tenn. 1993) (quoting *Miller v. State,* 584 S.W.2d 758, 761 (Tenn. 1979)).

> Accordingly, in determining whether an ex post facto violation exists in the context of sentencing, the critical question under both the United States and Tennessee Constitutions is whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred.  The determination is made by comparing the standard of punishment prescribed by each statute, rather than the punishment actually imposed.

*Id.* at 883.

D.  Conflict Between the Criminal Sentencing Reform Act of 1982 and that of 1989.

Tennessee Code Annotated section 40-35-117(b) provides, "Unless prohibited by the United States or Tennessee constitution, any person sentenced on or after November 1, 1989, for an offense committed between July 1, 1982, and November 1, 1989, shall be sentenced" pursuant to the Criminal Sentencing Reform Act of 1989.  Tenn. Code Ann. § 40-35-117(b) (2003).  To avoid conflict with constitutional *ex post facto* provisions, our supreme court has said, "[T]rial court judges imposing sentences after the effective date of the 1989 statute, for crimes committed prior thereto, must calculate the appropriate sentence under both the 1982 statute and the 1989 statute, *in their entirety*, and then impose the lesser sentence of the two."  *Pearson,* 858 S.W.2d at 884.

## IV.  Adjudication.

A.  State of the Face of the Record.

First, we address the state's claim that the petitioner's claim is not cognizable in *habeas corpus* because it is dependent upon facts that are not apparent on the face of the record.  We cannot determine, however, that such is the case.

Specifically, we cannot discern whether the critical, determining factors appear on the face of the record.  The petitioner's claim of a constitutional violation rests upon whether the 1989 sentencing scheme is disadvantageous to the petitioner.  *See Pearson*, 858 S.W.2d at 884 ("A comparison of the two statutory sentencing schemes in their entirety is necessary to determine if the 1989 statute may be fairly characterized as disadvantageous to the defendant.").  For instance, if the petitioner did in fact qualify for persistent-offender, Range II treatment via the 1982 Act, he was exposed to a minimum sentence of 28 years, a maximum of life, and a release eligibility of 40 percent.  The 1989 Act, accordingly, would probably not be disadvantageous to him, *unless* the same factual bases that would justify Range II treatment via the 1982 Act would also warrant a career-offender placement via the 1989 Act.  On the other hand, we perceive the possibility that, with all facts available to a sentencing court, the petitioner could fall into Range I pursuant to the 1982 Act, as he claims, but would nevertheless be liable to placement in a persistent-offender or career-offender category pursuant to the 1989 Act, in which event the latter might well be disadvantageous to him.[2]

The record in question is that of the third and final sentencing hearing – the one from which no appeal was taken and of which no record exists in the archives of this court.  The state may be correct that the facts that might support the petitioner's claims may be beyond the face of the

---

[2]Critically, the two statutory schemes differ in their definition of prior criminal convictions that serve as criteria for offender-range determination.  *Compare* Tenn. Code Ann. § 40-35-106(a) (Supp. 1988) (repealed 1989) (requiring that prior convictions utilized for range placement be based upon offenses that occurred within specified time frames of the instant offense) *with* Tenn. Code Ann. §§ 40-35-106 through 108 (2003) (prescribing no maximum time periods for the commission of the offenses giving rise to prior convictions).  These differences apparently account for the possibilities for variable results in comparing the two sentencing schemes in the present case.

existing record. On the other hand, the record of the third sentencing hearing may on its face instruct whether the petitioner was subject to sentencing as a persistent offender via the l982 Act and/or as a persistent or career offender via the l989 Act. We simply cannot know on the present appellate record, and apparently, neither could the *habeas corpus* court have known during its summary consideration of the petition.

Accordingly, we decline to approve the summary dismissal of the petition on the basis that the underlying facts do not appear on the face of the record.

B.  Cognizance of the Claim in *Habeas Corpus.*

The determination that the underlying facts of the petitioner's *ex post facto* claim could appear on the face of the record does not, however, equate with error in the *habeas corpus* court's summary dismissal of the petition.

Even if it appeared on the face of the sentencing record that the trial court did not perform the *Pearson* dual comparison, the claim does not warrant *habeas corpus* relief. *Rodney Buford v. State*, No. M1999-00487-CCA-R3-PC (Tenn. Crim. App., Nashville, July 28, 2000) (on claim similar to that of the present defendant, court held that the *ex post facto* claim availed petitioner Buford no relief in *habeas corpus*); *David T. Redfern v. Bell*, No. 01C01-9505-CC-00148, slip op. at 3 (Tenn. Crim. App., Nashville, May 9, 1996) (on claim similar to that of the present defendant, court held that the judgment was "facially valid and includes a lawful sentence pursuant to the 1989 Act). In *David T. Redfern*, this court pointedly said, despite that the trial court did not perform the "dual calculations required under *Pearson*," the trial court possessed statutory jurisdiction pursuant to the 1989 Act to impose the ten-year sentence. *David T. Redfern*, slip op. at 3. Likewise in the present case, the trial court was statutorily empowered to impose the 40-year sentence pursuant to the 1989 Act, *see* Tenn. Code Ann. §§ 40-35-112(a)(1), (c)(1), -118 (2003), the law in effect at the time of sentencing, *see id.* § 40-35-117(b).

In so holding, we are recognizing that the writ of *habeas corpus* is not, *per se*, a vehicle for enforcing constitutional rights. *See, e.g., Archer,* 851 S.W.2d at 162 (in rejecting claim that challenge to voluntariness of guilty plea may be presented in *habeas corpus*, court notes that the writ of *habeas corpus* simply does not "redress . . . alleged constitutional errors in many cases"); *David Andrew Harvey v. State*, No. 03C01-9510-CC-00307, slip op. at 2 (Tenn. Crim. App., Knoxville, June 28, 1996) ("Even if there were merit to the appellant's claim of [violation of his constitutional protection against] double jeopardy, such a claim renders the conviction voidable, not void."). The petitioner had an opportunity to address the *ex post facto* claim as an issue of ineffective assistance of counsel via a petition for post-conviction relief. A petition for *habeas corpus* relief is not a default procedure when the other apt procedures are not utilized for the purpose of raising the constitutional issue.

## V.  Conclusion.

Because the petitioner's collateral attack upon his 1992 conviction is not cognizable as a basis for *habeas corpus* relief, the order of the criminal court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE