# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 16, 2013 Session

## STATE OF TENNESSEE v. JOSHUA SHANE HAYES

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-B-1092, 2011-B-1047      Steve Dozier, Judge**

_____

**No. M2012-01768-CCA-R3-CD- July 1, 2013**

_____

The State appeals the trial court's grant of a motion to suppress filed by the Defendant, Joshua Shane Hayes. The State contests the trial court's finding that the "Exclusionary Rule Reform Act," which took effect July 1, 2011, did not apply retroactively to the search wherein officers seized drugs from the Defendant. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; James E. Gaylord, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; John Zimmerman, Assistant District Attorney General, for the appellant, State of Tennessee.

Rich McGee and James O. Martin, III, Nashville, Tennessee, for the appellee, Joshua Shane Hayes.

## OPINION
### I. Facts

This cases arises from law enforcement officers' execution of a search warrant on September 12, 2005. During the search, officers found a marijuana "grow operation." The officers arrested the Defendant for his participation in this operation, and the grand jury indicted him for possession with intent to deliver 300 grams or more of cocaine, manufacturing marijuana, and possession with intent to deliver more than ten pounds of marijuana. After a jury trial, the jury convicted the Defendant of each of these offenses.

The Defendant appealed his convictions to this Court, arguing, among other things, that the trial court erred when it failed to suppress evidence seized as a result of the warrant, which he alleged was defective. *State v. Hayes*, 337 S.W.3d 235 (Tenn. Crim. App. 2010). The Defendant contended that the search warrant failed to strictly comply with Rule 41(c) of the Tennessee Rules of Criminal Procedure and that it also failed to establish probable cause. *Id*. at 249. This Court held:

> At the time the search warrant was issued in Defendant's case, Tennessee Rule of Criminal Procedure 41(c) stated in relevant part:
>
>> The magistrate shall prepare an original and two exact copies of the search warrant, one of which shall be kept by the magistrate as a part of his or her official records, and one of which shall be left with the person or persons on whom the search warrant is served. The magistrate shall endorse upon the search warrant the hour, date, and name of the officer to whom the warrant was delivered for execution; and the exact copy of the search warrant and the endorsement thereon shall be admissible evidence. Failure of the magistrate to make said original and two copies of the search warrant or failure to endorse thereon the date and time of issuance and the name of the officer to whom issued, or the failure of the serving officer where possible to leave a copy with the person or persons on whom the search warrant is being served, shall make any search conducted under said search warrant an illegal search and any seizure thereunder an illegal seizure.
>
> Tenn. R.Crim. P. 41(c). Rule 41 was reformatted effective July 1, 2006; however, there were no substantive changes.
>
> In the present case, the warrant in question was signed by Judge Casey Moreland on September 12, 2005. Detective Kajihara had already made copies of the warrant, and the Judge had to sign and date each copy. Judge Moreland's copy of the warrant indicates that it was issued on September 12, 2005, at 10:35 a.m. . . .; however, the original and the other copy, which was given to Defendant, state[d] that it was issued at 10:35 p.m. . . . The warrant was executed around 1:00 p.m. on September 12, 2005. At the suppression hearing, Judge Moreland testified that he had no doubt that he signed the warrant at 10:35 a.m. because he would not have been in the office "at

ten-thirty at night." Detective Kajihara also testified that the warrant was signed at 10:35 a.m. on September 12, 2005.

Defendant contends that the judge failed to strictly comply with Rule 41(c) of the Tennessee Rules of Criminal Procedure because he wrote "p.m." instead of "a.m." on the original and one copy of the warrant. He argues that the warrant does not show that it was issued before it was executed, and the judge failed to retain an exact copy of the original search warrant. The State responds that the conflicting times represent a clerical error that did not prejudice Defendant.

*Hayes*, 337 S.W.3d at 251-52. The trial court relied on unpublished authority from this Court for the proposition that the conflicting AM and PM in the search warrant was a clerical error and not an "omission." *Id.* at 252-53. Upon this basis the trial court denied the motion to suppress. *Id.* This Court reversed. *Id.* at 254. In conducting our analysis in the Defendant's first appeal, we recognized the authority cited by the trial court but concluded that those cases had misinterpreted Tennessee Rule of Criminal Procedure 41, citing a case issued by the Tennessee Supreme Court. *Id.* We reasoned as follows:

In *State v. Bobadilla*, 181 S.W.3d 641 (Tenn. 2005), a magistrate issued a search warrant on May 13, 2003, to search the defendant's residence. The magistrate filled in the date that the search warrant was issued, but failed to state the hour that the warrant was issued. The trial court denied the defendant's motion to suppress, ruling that the warrant was executed on the same day it was issued and that the date of issuance and the name of the officer to whom the warrant was issued were endorsed on the search warrant making the warrant "supply all the things needed." *Id.* at 642. The Court of Criminal Appeals affirmed the trial court on grounds other than the merits of the search issue. The Supreme Court reversed, holding that the search and seizure were illegal pursuant to Tenn. R. Crim. P. 41(c). After quoting Rule 41(c), the Supreme Court emphasized, "[w]e have interpreted these rules strictly; the language is plain and the requirements are mandatory. *Coffee*, 54 S.W.3d at 233-34." *Bobadilla*, at 645. Specifically, the Supreme Court held,

The trial court is eminently correct in its rationale–that the pertinent part of Rule 41(c) is designed to ensure that if a search warrant is executed prior to its issuance, such discrepancy will be apparent on the face of the warrant. *Because the hour was not endorsed by the magistrate on the search warrant in this case, the warrant fails to explicitly show that it was issued then*

*executed. Therefore, the search warrant fails to meet the requirements as set forth in Tennessee Rule of Criminal Procedure 41(c).*

*Id.* (emphasis added).

We read *Bobadilla* to implicitly reject the "rule of omission" analysis found in *Powell*. First, as noted in *Bobadilla*, the primary purpose of the rule is to make sure that a search warrant is reviewed first by a magistrate, and then issued before any search takes place pursuant to authority of the search warrant. This requires in part that the time of the issuance of the search warrant be set forth in the warrant. Logically, in order to ensure that the warrant is first issued, then executed, not only must the time be endorsed, but the accurate time must be endorsed.

In *State v. David Wayne Jones*, No. M2007-01163-CCA-R3-CD, 2008 WL 833956 (Tenn. Crim. App. Mar. 28, 2008) *no perm. app. filed*, the two defendants' home was searched pursuant to a search warrant. It was noted on the warrant that it was issued at "11:25," but there was no indication whether it was 11:25 a.m. or 11:25 p.m. Testimony at the suppression hearing by the officer who obtained and executed the search warrant was that the warrant was issued at 11:25 p.m. on March 2, 2005, and the search of defendants' residence began at 12:15 a.m. on March 3, 2005. The trial court denied the motions to suppress filed by each defendant. In doing so, the trial court found that " 'the time being omitted from the search warrant was not problematic in this instance because the search warrant was executed on March 3, 2005[,] after being signed on March 2, 2005.'" *Id.* at \*2 (emphasis in original).

This Court reversed the trial court's denial of the suppression motions. While the defendants contended that the omission of an a.m. or p.m. designation was the same as failure to endorse altogether the time of issuance, the State argued that since the evidence established that the warrant was issued first and then executed, the defendants were not entitled to relief.

Relying on *Bobadilla*, the Court of Criminal Appeals in *Jones* noted that "although the search warrant contains the endorsement of an hour, 11:25, it does not contain the endorsement of the hour of its *issuance*." *Jones*, at \*3 (emphasis in original). Hence, the court concluded that not only must a time be endorsed, but also the correct and accurate time must be endorsed. The *Jones* Court noted:

4

Because there was no designation of whether the warrant was issued at 11:25 a.m. or 11:25 p.m., the warrant fails to comply with the mandatory requirement of Rule 41 that it be endorsed with the hour of its issuance. Because of this deficiency, the warrant was invalid, and the resulting search was illegal. Consequently, the evidence seized pursuant to the warrant must be suppressed.

*Id.*

The *Jones* Court was compelled by the ruling in *Bobadilla* to reach this result notwithstanding the fact that the search warrant was issued before it was executed. *Jones*, at *4.

In *State v. Patrick Daniels*, No. W2008-00254-CCA-R10-CD, 2009 WL 2393113 (Tenn. Crim. App. Aug. 5, 2009), the defendant appealed the trial court's denial of his motion to suppress pursuant to Tenn. R. App. P. 10. Defendant argued that he was entitled to relief because the search warrant, pursuant to which all physical evidence in the drug charge against him was seized, did not comply with the strict standards of Tenn. R. Crim. P. 41(c).

The facts in *Daniels* are remarkably similar to the case sub judice. The parties stipulated that the search warrant was issued at 10:35 a.m. on December 2, 2005, and that the issuing magistrate circled "p.m." instead of "a.m." when he endorsed the time of issuance upon the warrant. The search warrant was subsequently executed, and defendant was consequently arrested, with the arrest warrant being filed at 5:38 p.m. on December 2.

The trial court found there was no prejudice to the defendant by the magistrate erroneously circling "p.m." rather than "a.m.," and that the error did not "compromise the integrity of the search and did not 'undercut the purposes [Tenn. R.Crim. P.] 41(c) is designed to serve.'" *Id.* at *1. Relying upon *Bobadilla* and *Jones*, the court in *Daniels* reversed the trial court and suppressed the evidence pursuant to Tenn. R. Crim. P. 41(c). Notwithstanding the fact that the trial court ruled that a "good faith exception" to Tenn. R. Crim. P. 41(c) could cure the error made by the issuing magistrate, this Court concluded that "our Supreme Court has not recognized a good faith exception to the procedural safeguards in Rule 41(c), and we are constrained to follow the rule's mandate." *Id.*

5

Accordingly, this Court concluded that,

> By *erroneously circling " p.m.,"* the magistrate endorsed the warrant with a *time later than it was executed* in violation of the rule's express language and the rule's purpose. Accordingly, we are compelled to reverse the trial court's order denying the appellant's motion to suppress.

*Id.* at *3 (emphasis added).

> Based upon *Bobadilla*, *Jones*, and *Daniels*, we conclude that the pertinent part of Tenn. R. Crim. P. 41 is not a "rule of omission;" that is, it is not a situation where the sanctions apply *only* if the date and/or time of issuance of the warrant is omitted. The integral purpose of Rule 41 is to ensure that a search warrant is first issued, then executed. Accordingly, the requirement that the date and time of issuance shall be endorsed implicitly means that the *correct* date and time shall be endorsed. Thus, the search warrant in this case failed to comply with the requirements of Rule 41 and the motion to suppress must be granted.

*Hayes*, 337 S.W.3d at 254-56. Accordingly, we reversed the judgments of conviction and remanded the case for further proceedings.

After remand, on April 15, 2011, the Davidson County Grand Jury indicted the Defendant on six drug related charges, three of which were identical to his previous indictments. These charges stemmed from the same search we had previously found invalid.

On May 23, 2011, the Governor signed into law the "Exclusionary Rule Reform Act." The act, codified at Tennessee Code Annotated section 46-1-108, provides:

> Notwithstanding any law to the contrary, any evidence that is seized as a result of executing a search warrant issued pursuant to this part or pursuant to Tennessee Rules of Criminal Procedure Rule 41 that is otherwise admissible in a criminal proceeding and not in violation of the constitution of the United States or Tennessee shall not be suppressed as a result of any violation of this part or any violation of the Tennessee Rules of Criminal Procedure Rule 41 if the court determines that such violation was a result of a good faith mistake or technical violation made by a law enforcement officer, court official, or the issuing magistrate as defined in subsection (c).

T.C.A. § 40-6-108(a) (2012). The Act specifies that is "shall take effect July 1, 2011." 2011 Tenn. Pub. Acts ch. 252 § 2.

After the second indictment was issued, the Defendant again moved to have the evidence against him suppressed based upon the invalid search warrant. At the hearing on the motion to suppress, the State's attorney informed the trial court that, based upon this Court's decision, the District Attorney's office had asked the Legislature to change the law, which had in fact happened. This was the basis for the Defendant's re-indictment. The Defendant's attorney informed the trial court that there were two issues he wanted the court to be addressed. The first issue was whether the "law of the case doctrine" divested the court of jurisdiction to rehear the issue of the validity of the search warrant. The second issue was whether the "Exclusionary Rule Reform Act," effective July 1, 2011, was to be retroactively applied .

The trial court took the matter under advisement and later issued a written order. In the order, the trial court found:

> The [D]efendant filed a motion to preclude the State from using the evidence secured as a result of the invalidated search warrant. The State argues the change in the law should be applied retroactively to allow the evidence to be presented. The Court finds the evidence should be suppressed as the new act should not be applied retroactively to validate the warrant.

> Generally, statutes are presumed to apply prospectively unless the legislature clearly demonstrates intent to the contrary. *State v. Thompson*, 151 S.W.3d 434 (Tenn. 2004); *Van Tran v. State*, 66 S.W.3d 790, 797-98 (Tenn. 2001); *State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998). The legislature in this case did not exhibit an intention for this act to be applied retroactively. The State argues that as a procedural rule, the statute may be applied retroactively. However, the Court notes that similar to *State v. Odom*, the plain language of the statute does not indicate the intent to be retroactively applied. Thus, "had the legislature intended to depart from the long-established rule that statues are presumed to apply prospectively, it could have so indicated." *State v. Odom*, 137 S.W.3d 572 (Tenn. 2004). Further, "even a procedural or remedial statute may not be applied retroactively if it impairs a vested right or a contractual obligation." *State v. Hanners*, 235 [S.W.]3d 609, 612 (Tenn. Crim. App. 2007).

> The search warrant at issue in this case was executed in 2005. That warrant was found to be invalid based upon a failure to comply with the

7

applicable rule of criminal procedure. A legislative change to the Rules of Criminal Procedure in 2011 should not be applied retroactively to the search. Although the rule was amended, that amendment did not occur until after the indictment was issued in this case and there is no language indicating an intent for it to be applied retroactively. The Court finds the amendment should not be applied retroactively to validate the warrant.

Additionally, such retroactive application would implicate constitutional protections against ex post facto laws. Both the United States and Tennessee Constitutions protect against ex post facto laws. U.S. Const. Art. 1, § 10, cl. 1; Tenn. Const. Art. 1, § 11. Our state supreme court has indicated that there are five classifications of ex post facto laws: (1) a law that provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent: (2) a law that aggravates a crime or makes it greater than when it was committed; (3) a law that changes a punishment or inflicts a greater punishment than the law annexed to the crime when it was committed; (4) a law that changes the rules of evidence and receives less or different testimony than was required at the time of the commission of the offense in order to convict the offender; and (5) every law which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage. *Miller v. State*, 584 S.W.2d 758, 761 (Tenn. 1979).

If the Court were to allow the retroactive application of the amended rule of procedure, clearly the law would alter the situation of the defendant to his disadvantage based upon the law's relationship to the offenses charged in this case. *Id.* Without the amended rule, the evidence supporting the offenses would remain suppressed, as ordered by the Court of Criminal Appeals. Therefore, the Court finds the amended rule cannot be applied retroactively to this particular warrant due to ex post facto implications.

Therefore, based upon the above considerations, the [D]efendant's motion to suppress evidence based upon retroactive application of the amendments to Rule 41 of the Tennessee Rules of Criminal Procedure is granted.

After the trial court issued its order, the State moved to dismiss the indictment, citing its inability to prove the charges without the evidence seized. The trial court granted the State's motion to dismiss. The State now appeals from the trial court's ruling that the "Exclusionary Rule Reform Act" did not apply retroactively to this case.

**II. Analysis**

On appeal, the State contends that the "Exclusionary Rule Reform Act" ("the Act") should apply retroactively to the Defendant's case, arguing that the Act is procedural and poses no ex post facto concern. The Defendant disagrees, contending that the trial court correctly found that because the legislature had not indicated an intention for the amendment to apply retroactively, the amendment should not be applied to his case. The Defendant also argues that retroactive application of the Act would violate constitutional protections against ex post facto laws. We agree with the Defendant on both arguments.

Under the Tennessee Constitution, "no retrospective law . . . shall be made." Tenn. Const. art. 1, § 20. Therefore, unless the legislature clearly indicates otherwise, statutes are presumed to operate prospectively. *State v. Hanners*, 235 S.W.3d 609, 612 (Tenn. Crim. App. 2007) (citing) *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998). Statutes that are remedial or procedural in nature, however, may be applied retroactively to causes of action arising before the acts became law and to suits pending when the legislation took effect. *Id.* (citing *In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn .2004)). "The distinction between substantive and procedural law has long been recognized by the courts of this state." *State v. Hutchison*, 898 S.W.2d 161, 176 (Tenn. 1994); *cf. State v. Odom*, 137 S.W.3d 572, 581 (Tenn. 2004) (citing *Hutchison* and stating "Although the distinction between substantive and procedural law has been recognized by the courts of this state, we have not applied this distinction in capital sentencing.").

Remedial statutes are defined as "'[l]egislation providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained . . . .'" *Hanners*, 235 S.W.2d at 612 (citing *Nutt*, 980 S.W.2d at 368). Similarly, a procedural statute is one that addresses the mode or proceeding by which a legal right is enforced. *Id.* (citing *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976)). However, "even a procedural or remedial statute may not be applied retroactively if it impairs a vested right or contractual obligation." *Id.* (citing *In re D.A.H.*, 142 S.W.3d at 273). "A vested right is . . . a right which is proper for the state to recognize and protect and of which [an] individual [can] not be deprived arbitrarily without injustice." *Id.* In the case presently before us, arguably, the Act is procedural or remedial. It, however, cannot be properly applied to the Defendant's case if it impairs a vested right, implicating constitutional protections against ex post facto laws.

Applying a statute retroactively in a criminal case may implicate constitutional prohibitions against ex post facto laws, which are forbidden under both the United States and Tennessee Constitutions. U.S. Const. art. 1, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law . . . ."); Tenn. Const. art. I, § 11 ("[L]aws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are

9

contrary to the principles of free government; wherefore no ex post facto law shall be made.").  In *Miller v. State*, 584 S.W.2d 758 (Tenn. 1979), our Supreme Court noted that there are five classifications of ex post facto laws: (1) a law that provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent; (2) a law that aggravates a crime or makes it greater than when it was committed; (3) a law that changes punishment or inflicts a greater punishment than the law annexed to the crime when it was committed; (4) a law that changes the rules of evidence and receives less or different testimony than was required at the time of the commission of the offense in order to convict the offender; and (5) every law which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage.[1] *Id.* at 761 (citing *State v. Rowe*, 116 N.J.L. 48, 181 A. 706 (1935)); *see Odom*, 137 S.W.3d at 582.

We conclude that the Act cannot be applied to the Defendant's case for several reasons.  First, the Act does not contain any indication by the Legislature that it should be applied retroactively.  Second, in our view, the retroactive application of the Act violates the Defendant's Tennessee constitutional protection against ex post facto laws because it alters the Defendant's situation to his disadvantage.  *See Miller* 584 S.W.2d at 761; *Odom*, 137 S.W.3d at 582.  Before the Act's enactment, the Defendant's "situation" under the law applicable at that time included that the evidence against him must be suppressed because of the mistake contained in the search warrant.  *See Hayes*, 337 S.W.3d at 235.  After the enactment of the Act, that same evidence would be admissible against him.  T.C.A. § 40-6-108(a) (stating "evidence . . . shall not be suppressed as a result of any violation of this part or any violation of the Tennessee Rules of Criminal Procedure Rule 41 if the court determines that such violation was a result of a good faith mistake or technical violation made by a law enforcement officer, court official, or the issuing magistrate as defined in subsection (c)").  This clearly places the Defendant at a disadvantage, and application of the Act to his case would, therefore, violate constitutional protections against ex post facto laws.

We cannot agree with the State's assertion that the Defendant's "situation" being altered to his disadvantaged must relate to the offense or the punishment.  In *Hanners*, this Court addressed whether the legislative amendment to the expungement statute could nevertheless be applied in the appellant's case to bar expungement when he would have been entitled to expungement at the time of his conviction and sentencing.  We held:

---

[1]The Tennessee Supreme Court also indicated in *Miller* that the Ex Post Facto Clause of the Tennessee Constitution has a broader reach and provides more protection than its federal counterpart. *See Miller, 584* S.W.2d at 760-61; *see also State v. Larry Wade Gibson*, No. E2003-02102-CCA-R3-CD, 2004 WL 2827000, at *3 (Tenn. Crim. App., at Knoxville, Dec. 9, 2004), *perm. app. denied* (Tenn. Mar. 21, 2005). Therefore, whether a person is "disadvantaged" by the law is a valid inquiry in a Tennessee ex post facto analysis; whereas, the federal analysis has shifted away from this more lenient standard. *See Collins v. Youngblood*, 497 U.S. 37, 46-52 (1990).

[I]n our view, the retroactive application of the amended expungement statute violates the appellant's constitutional protection against ex post facto laws because at minimum it offers a situation disadvantageous to the appellant by unduly burdening him with the societal stigma attached to a felony. *See Adler*, 92 S.W.3d at 402 (noting that the purpose of the expungement statute is "to prevent a citizen from bearing the stigma of having been charged with a criminal offense, where he was acquitted of the charge"); *Doe*, 588 S.W.2d at 552 (stating that "[i]t is common knowledge that the preferment of charges against a citizen can have a severe impact upon his reputation, regardless of whether or not a conviction results"); *see State v. Anderson*, 12 Kan. App. 2d 342, 744 P.2d 143 (1987) (stating that retroactive application of change in expungement statute to deny defendant the opportunity to expunge his criminal record disadvantaged him and constituted punishment, and thus, was an ex post facto violation); *but see State v. T.P.M.*, 460 A.2d 167, 189 N.J. Super. 360 (N.J. Super. Ct. App. Div. 1983) (stating that retroactive application of change in expungement statute to deny defendant the opportunity to expunge his criminal record was not violation of ex post facto clause because the "existence of a criminal record is simply a fact of life, not part of the sentence and punishment").

*Hanners*, 235 S.W.3d at 613-14. In line with this reasoning, we reject the State's argument that the Act should apply retroactively because it does not disadvantage the Defendant's "situation" with respect to the offense or punishment.

### III. Conclusion

After a thorough review of the record before this Court, we hold that retroactive application of the Act to the Defendant's case would violate constitutional protections against ex post facto laws. The Act also contains no indication by the Legislature of the intent that it should be applied retroactively. As such, we affirm the trial court's judgment granting the Defendant's motion to suppress.

_____
ROBERT W. WEDEMEYER, JUDGE