# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 8, 2010 Session

## JOHN DOE v. ROBERT E. COOPER, JR., AS ATTORNEY GENERAL FOR STATE OF TENNESSEE

**Appeal from the Circuit Court for Davidson County**
**No. 08 C 730  Joe Binkley, Jr., Judge**

---

**No. M2009-00915-COA-R3-CV - Filed July 9, 2010**

---

This is a declaratory judgment action in which Petitioner challenges as unconstitutional the retroactive application of the Tennessee Sexual Offender Registration, Verification, and Tracking Act of 2004. Petitioner was convicted of five counts of indecent exposure in 2001when the Sexual Offender Registration and Monitoring Act of 1994 was in effect. The 1994 Act did not classify indecent exposure as a "sexual offense." Three years after his convictions, the Tennessee Sexual Offender Registration, Verification, and Tracking Act of 2004 became law. Unlike the prior Act, the Act of 2004 classified persons convicted of "at least 3 indecent exposure offenses" as "sexual offenders," it required all persons classified as "sexual offenders" to register with the sex offender registry, and it prohibited sexual offenders whose victims were minors from working or residing within 1,000 feet of a school, child care facility, or public park. The trial court made the determination the 2004 Act was part of a non-punitive regulatory framework that did not constitute punishment and the retroactive application of the 2004 Act to Petitioner was not unconstitutional. Petitioner established standing to challenge the classification, registration and employment restraint provisions of the Act of 2004 as applied to him, and we have determined that the 2004 Act, as applied to Petitioner, is not unconstitutional. Accordingly, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Brent Horst, Nashville, Tennessee, for the appellant, John Doe.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Lyndsay Fuller Sanders, Assistant Attorney General, for the appellee, State of Tennessee.

# OPINION

In 2001, Petitioner pled guilty to four Class B misdemeanor offenses of indecent exposure and he entered a *nolo contendre* plea to one Class A misdemeanor offense of indecent exposure.[1] The victim of the Class A misdemeanor was a minor.[2] The Sexual Offender Registration and Monitoring Act of 1994 was in effect at the time and misdemeanor offenses of indecent exposure were not categorized as sexual offenses under the 1994 Act. Thus, persons found guilty of a misdemeanor offense of indecent exposure in 2001 were not subject to the Sexual Offender Registration and Monitoring Act of 1994.

The Act of 1994 was superseded by the Tennessee Sexual Offender Registration, Verification, and Tracking Act of 2004. The Act of 2004 classifies persons convicted of "at least 3 indecent exposure offenses" as sexual offenders[3] and requires that they participate in the sex offender registry codified at Tenn. Code. Ann. § 40-39-201 to 306. The Act of 2004 also places certain restrictions on sexual offenders' employment and residence. Specifically, Tenn. Code Ann. § 40-39-211(a) makes it a violation of the 2004 Act for a sexual offender, whose victim was a minor, to knowingly establish a primary or secondary residence[4] or

---

[1]Tenn. Code Ann. § 39-13-511(b)(1) states, a person commits the offense of indecent exposure who:

(A) In a public place, as defined in § 39-11-106, or on the private premises of another, or
so near thereto as to be seen from the private premises:
(i) Intentionally:
    (a) Exposes the person's genitals or buttocks to another; or
    (b) Engages in sexual contact or sexual penetration as defined in § 39-13-501; and
(ii) Reasonably expects that the acts will be viewed by another and the acts:
    (a) Will offend an ordinary viewer; or
    (b) Are for the purpose of sexual arousal and gratification of the defendant; or . . . .

[2]Though the record is not clear on this issue, it was stated in oral argument that at least one of Petitioner's victims was a minor; moreover, an essential element of the Class A misdemeanor offense is that the victim of the indecent exposure was under thirteen years of age. *See* Tenn. Code Ann. 39-13-511(b)(2). "'Indecent exposure,' as defined in subdivision (b)(1), is a Class B misdemeanor, *unless* the defendant is eighteen (18) years of age or older and *the victim is under thirteen (13) years of age*, in which event, indecent exposure is a *Class A misdemeanor. . . .*" Tenn. Code Ann. 39-13-511(b)(2) (emphasis added).

[3]According to Tenn. Code Ann. 40-39-202(16) (2004), a "[s]exual offender" is defined as a person who has been convicted in this state of committing a sexual offense as defined in subdivision (17);" and as indicated in subdivision (17)(A)(vii), "[i]ndecent exposure, under 39-13-511, upon a third or subsequent conviction" is a sexual offense.

[4]Petitioner admitted at trial that he has not been affected by the residency restriction as his home is not within 1,000 feet of any school, child care facility or public park and does not assert an "as applied"
(continued...)

-2-

accept employment within 1,000 feet of any school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public.

Petitioner registered with the sex offender registry after the 2004 Act became law. At that time, he was employed at a computer networking support firm. Petitioner was subsequently terminated due in part to the fact that a client of the company complained when the client learned that Petitioner was a registered sexual offender.[5]

Thereafter, Petitioner obtained employment with Vanderbilt University Medical Center as a Network Support Specialist. The University School of Nashville, a private school with students from kindergarten through the twelfth grade, is located within 1,000 feet of where Petitioner was employed. After Petitioner had worked for Vanderbilt for a year and a half, Vanderbilt learned that Petitioner was a registered sexual offender and that he was prohibited from working within 1,000 feet of a school. Following an inquiry by the Human Resource Department, Petitioner's employment with Vanderbilt was terminated. The termination letter, signed by Human Resource Director and Informatics Department Director, stated:

> It has come to our attention that the information that you disclosed about your criminal background in the application process was not accurate. This inaccuracy became apparent after it was brought to the attention of your department that you are on the Tennessee Sexual Offender Registry. Once this matter was raised to Employee Relations, your criminal background was reviewed again.

> This review revealed that you misrepresented your convictions. This misrepresentation is viewed as a falsification of your application. Additionally, based on a review of the facts of your convictions, we have been advised that you are prohibited from working in an environment where you would come in contact with minors.

> Therefore, because of the two reasons stated above, we have no choice but to terminate your employment effective immediately.

---

[4](...continued)
challenge regarding the residency restraints.

[5]The president of the firm testified at trial that Petitioner was terminated because of the client's complaint, as well as "some other issues during his tenure" with the firm.

Thereafter, Petitioner worked on a contract basis with Telco Solutions until he was hired by HCA Healthcare to work at its headquarters in Nashville, Tennessee. The HCA facility where Petitioner worked is within 1,000 feet of Centennial Park; therefore, Petitioner was in violation of the Act by working too close to a public park. Petitioner subsequently quit that job to avoid the possibility of prosecution for violation of the 2004 Act. Petitioner states he has been unable to secure steady employment since that time because of his status as a registered sexual offender and the restrictions on his employment.

On March 3, 2008, Petitioner filed this action seeking declaratory and injunctive relief, asserting that the Tennessee Sexual Offender Registration, Verification, and Tracking Act of 2004, as applied to him, is in violation of Article I, Section 11 of the Tennessee Constitution. Petitioner contends the *ex post facto* application of the law is unconstitutional because it requires that he register as a sexual offender and he is prohibited from working or residing within 1,000 feet of a child care center, a school or a public park.

The case proceeded to trial on February 10, 2009. At trial, Petitioner principally relied on *State v. Miller*, 584 S.W.2d 758, 761 (Tenn. 1979), which held that the protections afforded to citizens under the Ex Post Facto Clause of the Tennessee Constitution pertain to any "law which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage . . . ." The State asserted that *Miller* was distinguishable and inapplicable and it principally relied on *State v. Pearson*, 858 S.W.2d 879 (Tenn. 1993), asserting that Petitioner's status as a sex offender and the requirement that he register with the sex offender registry is not punishment, it is part of a nonpunitive regulatory framework; therefore, it does not violate Petitioner's constitutional rights.

On March 25, 2009, the trial court rendered its ruling. The trial court found *State v. Pearson* applicable and relied on the reasoning that a law must "affect the *punishment* to the person's *disadvantage* in order to be considered an ex post facto law," 858 S.W.2d 879, 883 (Tenn. 1993) (emphasis added), to conclude that requiring Petitioner to register with the sex offender registry is not punishment; to the contrary, the trial court found it is "part of a nonpunitive regulatory framework." The trial court went on to hold that the Act of 2004, as applied to Petitioner, was constitutional. This appeal followed.

### STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact,

-4-

it must support another finding of fact with greater convincing effect. *See Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000).

## ANALYSIS

### A.
### "AS APPLIED" CONSTITUTIONAL CHALLENGES

There are two types of constitutional challenges that can be asserted, a facial challenge and an "as applied" challenge. A facial challenge essentially "involves a claim that the statute fails an applicable constitutional test and should be found invalid in all applications. *Waters v. Farr*, 291 S.W.3d 873, 921 (Tenn. 2009). Whereas an "as applied" challenge "presumes that the statute is generally valid. . . . It merely asserts that specific applications of the statute are unconstitutional." *Id.* at 923 (citations omitted). "As applied" challenges are analyzed on a case-by-case basis. *Id.* (citing *Tobe v. City of Santa Ana*, 892 P.2d 1145, 1153 (Cal. 1995)). Hence, a statute "may be held unconstitutional under one set of facts and constitutional under another set of facts. *McConnell v. City of Lebanon*, 314 S.W.2d 12, 19 (1958) (citations omitted). A petitioner who challenges a statute as unconstitutional "as applied" to that particular individual need only demonstrate that the statute is unconstitutional when applied to the petitioner's particular facts and circumstances. *Waters*, 291 S.W.3d at 923 (citing *Lochsa Falls L.L.C. v. State*, 207 P.3d 963, 971-72 (Idaho 2009); *Tex Worker's Comp. Comm'n v. Garcia*, 893 S.W.2d (Tex. 1995); *Gillenwaters v. State,* 205 S.W.3d 534, 536 n.3 (Tex. Crim. App. 2006)).

Plaintiff has asserted an "as applied" challenge to the constitutionality of Tennessee Sexual Offender Registration, Verification, and Tracking Act of 2004. "Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness. *Waters*, 291 S.W.3d at 882 (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008)). The courts of Tennessee "do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties." *State v. Taylor*, 70 S.W.3d 717, 720 (Tenn. 2002) (citing *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). Furthermore, the intent is to hold statutes constitutional whenever possible. *Waters*, 291 S.W.3d at 882 (citing

*State v. Pickett*, 211 S.W.3d 696, 700 (Tenn. 2007). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." *Pickett*, 211 S.W.3d at 700 (quoting *Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003)). As stated in *Cruz v. Cheverolet Grey Iron, Div. of Gen. Motors Corp.,* "a statute comes clothed in a presumption of constitutionality [given] that the Legislature does not intentionally pass an unconstitutional act." 247 N.W.2d 764, 766 (alteration in original) (citations omitted).

B.

CONSTITUTIONAL PROHIBITIONS ON *EX POST FACTO* LAWS

Petitioner asserts the statute is unconstitutional as applied to him under the Tennessee Constitution. He specifically challenges the fact the 2004 Act classifies him as a sexual offender and requires that he register with the TBI so that he will be listed on the sexual offense registry; he also challenges the restraints on his freedom pertaining to where he may work.

*Ex post facto* laws are forbidden under both the United States and Tennessee Constitutions. *See* U.S. Const. art. 1, § 10, cl. 1[6]; Tenn. Const. art. I, § 11.[7] Generally, the *ex post facto* prohibition is aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Kaylor v. Bradley*, 912 S.W.2d 728, 732 (Tenn. Ct. App. 1995) (quoting *California Dep't of Corrs. v. Morales,* 514 U.S. 499, 504 (1995)). The United States Supreme Court's definition of an *ex post facto* law includes laws which:

> [Make] that criminal which was not so at the time the action was performed, or which increases the punishment, or, in short, which, in relation to the offense or its consequences, alters the situation of a party to his disadvantage." *Kring v. Missouri*, 107 U.S. 221, 228-29, 2 S.Ct. 443, 27 L.Ed. 506 (1883). The Court later declared: "The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer." *Dobbert v. Florida*, 432 U.S. 282, 299, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). However, in 1990 the Court reined in what it would consider an ex post facto law by eliminating the broad "detriment or disadvantage" category and returning to a more traditional definition of ex post

---

[6]"No State shall . . . pass any . . . ex post facto law . . . ." U.S. Const. art. 1, § 10, cl. 1

[7]"That laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of free Government; wherefore no *ex post facto* law shall be made." Tenn. Const. art. I, § 11

facto by prohibiting laws which, "punish as a crime an act previously committed, which was innocent when done; ... make more burdensome the punishment for a crime, after its commission; [and] deprive one charged with crime of any defense available according to law at the time when the act was committed." *Collins v. Youngblood*, 497 U.S. 37, 52, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).

*State v. Gibson*, No. E2003-02102-CCA-R3-CD, 2004 WL 2827000, at *2 (Tenn. Crim. Ct. App. Dec. 9, 2004).

The United States Supreme Court and the Supreme Court of Tennessee "have adopted complementary constructions of these provisions." *Kaylor*, 912 S.W.2d at 731. The Tennessee Supreme Court established five broad categories of laws that violate the Ex Post Facto Clause of Tennessee Constitution. The classifications are as follows:

> 1. A law which provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent.
> 2. A law which aggravates a crime or makes it greater than when it was committed.
> 3. A law that changes the punishment or inflicts a greater punishment than the law annexed to the crime when it was committed.
> 4. A law that changes the rules of evidence and receives (sic) less or different testimony than was required at the time of the commission of the offense in order to convict the offender.
> 5. Every law which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage.

*Miller v. State*, 584 S.W.2d 758, 761 (Tenn. 1979) (citations omitted). Our Supreme Court also stated in *Miller* that "the Ex Post Facto Clause of the Tennessee Constitution has a broader reach than its federal counterpart."[8] *Gibson*, 2004 WL 2827000, at *3) (citing *Miller*,

---

[8]The Tennessee Criminal Court of Appeals held in *State v. Gibson*, No. E2003-02102-CCA-R3-CD, 2004 WL 2827000, at *3 n.6 that:

> Because the Tennessee Supreme Court found the Tennessee Constitution's Ex Post Facto Clause is more expansive than the one in Article I, Section 10 of the United States Constitution, there is no conflict between the fifth category of the Tennessee *Miller* ruling of 1979 and the 1990 Supreme Court ruling in *Collins v. Youngblood,* which shifted emphasis away from whether or not a defendant had been

(continued...)

584 S.W.2d at 760-61).

When considering, *in the context of sentencing*, whether an *ex post facto* violation of the constitution exists:

> [T]he critical question under both the United States and Tennessee Constitutions is whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred. The determination is made by comparing the standard of punishment prescribed by each statute, rather than the punishment actually imposed. Applying a law that inflicts the same or a lesser punishment raises no ex post facto concerns.

*State v. Pearson,* 858 S.W.2d at 883. (internal citations omitted)

A different analysis is necessary however if it is determined the legislation is not intended to affect sentencing, but instead establishes *civil proceedings*. *See Smith v. Doe*, 538 U.S. 84, 93 (2003); *see also Strain v. Tennessee Bureau of Investigation*, No. M2007-01621-COA-R3-CV, 2009 WL 137210, at *6 (Tenn. Ct. App. Jan. 20, 2009).

In *Smith v. Doe*, the United States Supreme Court established a two-part test, the so-called "intent-effects test," requiring courts to first "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Smith,* 538 U.S. at 92 (quoting *Kansas v. Hendricks,* 521 U.S. 346, 361 (1997)). The same intent-effects test is applied in Indiana, *see Wallace v. Indiana*, 905 N.E.2d 371, 378 (Ind. 2009), and Kentucky, *see Commonwealth v. Baker*, 295 S.W.3d 437, 442 (Ky. 2009); *Indiana v. Pollard*, 908 N.E.2d 1145, 1149 (Ind. 2009) (holding the second part of the test, if necessary, is to examine whether the statute is "so punitive in effect as to negate that intention thereby transforming what had been intended as a civil regulatory scheme into a criminal penalty.").

The second part, examining the effects of the law, is done by reviewing the factors set

---

[8](...continued)
"disadvantaged" in an ex post facto analysis. *See Collins v. Youngblood,* 497 U.S. at 46-52 (expressly overruling *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), and *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), both of which had relied on the more lenient standard of defining an ex post facto law as one that merely disadvantaged a defendant). It is well-settled law that a state constitution may provide greater protection than its federal counterpart. *See Van Tran v. State,* 66 S.W.3d 790, 801 (Tenn. 2001).

forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963).[9] *See Smith v. Doe*, 538 U.S. at 93. The *Kennedy* factors, which have been frequently analyzed in the context of sex offender laws, that are most relevant to our analysis include whether: "in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Smith*, 538 U.S. at 97. Because the *Kennedy* factors apply in various constitutional contexts, they are "neither exhaustive nor dispositive," but they are "useful guideposts." *Smith*, 538 U.S. at 97 (quoting *Hudson v. U.S.*, 522 U.S. 93, 99 (1997)).

As for the first part of the intent-effects test, whether the Tennessee General Assembly intended to establish civil proceedings with the enactment of the 2004 Act, this court determined in 2009 that the Act was "part of a nonpunitive regulatory framework," and it was "not punishment." *Strain*, 2009 WL 137210 at *6. Moreover, just this week, the Tennessee Supreme Court held the registration requirements imposed by the sex offender registration act to be "nonpunitive." *Ward v. State of Tennessee*, No. W2007-01632-SC-R11-PC, ___ S.W.3d ___, 2010 WL _____, * 8 (Tenn. July 7, 2010). These holdings are consistent with the declared intentions of the Tennessee General Assembly that:

> The general assembly also declares, however, that in making information about certain offenders available to the public, the general assembly does not intend that the information be used to inflict retribution or additional punishment on those offenders.

Tenn. Code Ann. § 40-39-201(b)(8). Further evidence of the General Assembly's non-punitive intent can be found throughout the code section:

---

[9]The *Kennedy* factors migrated their way into *ex post facto* case law from "double jeopardy jurisprudence; they have their earlier origins in cases under the Sixth and Eighth Amendments, as well as the Bill of Attainder and the Ex Post Facto Clauses." *Smith*, 538 U.S. at 97. The factors generally applied by the federal courts to determine whether an Act of Congress is penal or regulatory in character, commonly referred to as the *Kennedy* or *Mendoza-Martinez* factors, include:

> whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963) (internal footnotes omitted).

(1) . . . Sexual offenders pose a high risk of engaging in further offenses after release from incarceration or commitment, and protection of the public from these offenders is of paramount public interest;

(2) It is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses collected pursuant to this part, to allow members of the public to adequately protect themselves and their children from these persons;

(3) Persons convicted of these sexual offenses have a reduced expectation of privacy because of the public's interest in public safety;

(4) In balancing the sexual offender's and violent sexual offender's due process and other rights against the interests of public security, the general assembly finds that releasing information about offenders under the circumstances specified in this part will further the primary governmental interest of protecting vulnerable populations from potential harm;

. . .

(6) To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of offenders and for the public release of specified information regarding offenders. This policy of authorizing the release of necessary and relevant information about offenders to members of the general public is a means of assuring public protection and shall not be construed as punitive; . . .

Tenn. Code Ann. § 40-39-201(b). Therefore, under the first part of the intent-effects test, it is evident that the stated purpose of Tennessee's Sexual Offender Registration and Verification and Tracking Act of 2004 was not "to inflict retribution or additional punishment on those offenders" but "to protect the safety and general welfare of the people of [Tennessee]." *Id*.

We now turn our attention to the second part of the intent-effects test to determine whether specific provisions are "so punitive that when applied they negated the State's nonpunitive intent." *See Strain,* 2009 WL 137210, at *6 (quoting *Doe v. Bredesen*, 2006 WL 849849, at *7 (E.D. Tenn. Mar. 28, 2006), *aff'd* 507 F.3d 998 (6th Cir. 2007)); *see also Commonwealth v. Baker*, 295 S.W.3d at 442 (quoting *Hendricks*, 521 U.S. at 361) (stating the court "must determine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it 'civil.'").

CLASSIFICATION AND REGISTRATION REQUIREMENTS

We will first discuss the classification and registration requirements of the 2004 Act. To date, every *ex post facto* challenge of Tennessee's statutory scheme requiring persons

classified as sexual offenders to register with the TBI sex offender registry has been rejected. The United States Supreme Court and the United States Court of Appeals for the Sixth Circuit upheld Tennessee's sex offender registry in *Smith v. Doe*, 538 U.S. 84 (2003), *Conn. Dept. of Public Safety v. Doe,* 538 U.S. 1 (2003), *Doe v. Bredesen*, No. 3:04-CV-566, 2006 WL 849849 (E.D. Tenn. Mar. 28, 2006), *aff'd* 507 F.3d 998 (6th Cir. 2007), *pet. cert. denied,* 129 S.Ct. 287 (2008), and *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999). Furthermore, both the Court of Appeals and the Court of Criminal Appeals of Tennessee upheld the sex offender registry against *ex post facto* challenges. *See Strain v. Tennessee Bureau of Investigation*, No. M2007-01621-COA-R3-CV, 2009 WL 137210 (Tenn. Ct. App. Jan. 20, 2009); *State v. Gibson*, No. E2003-02102-CCA-R3-CD, 2004 WL 2827000 (Tenn. Crim. Ct. App. Dec. 9, 2004).

The Court of Criminal Appeals of Tennessee noted in *Gibson* that "The United States Supreme Court has declared that sexual offender registration acts with retroactive application do not violate the federal Constitution's Ex Post Facto Clause if they are nonpunitive in nature." *Id*. at *5 (citing *Smith v. Doe*, 538 U.S. at 105-06). Discussing challenges to the 1994 Act, the *Gibson* court noted:

> [T]hat the majority of jurisdictions to have addressed this issue have held that their respective sexual offender registration statutes do not violate *ex post facto* prohibitions, even when applied to offenders convicted prior to enactment of the registration law. These courts have generally reasoned that, while retrospective, sexual offender registration laws are not punitive but rather administrative or regulatory, and therefore do not disadvantage the offender. *See generally* Carol Schultz Vento, Annotation, Validity, Construction, and Application of State Statutes Authorizing Community Notification of Release of Convicted Sex Offender, 78 A.L.R.5th 489 (2004); 16B Am Jur.2d. Constitutional Law, Sex Offender Legislation § 657 (2004).

*Id*. at 5-6.

In this court's thorough analysis of the issue as it pertained to the 2004 Act appears in *Strain*:

> The court in [*Doe v. Bredesen*], reviewing the intent of the legislature in enacting the Act, held that the legislature "intended to implement a civil regulatory scheme, not one of punishment." [footnote omitted] 2006 WL 849849 at *7. Having so held, the court went further to determine whether the specific provisions at issue in that case – lifetime registration, verification and tracking requirements for violent sexual offenders – were "so punitive that

-11-

when applied they negated the State's nonpunitive intent." *Id.* After reviewing at length similar statutes and cases from other jurisdictions, the court concluded that the "classification of sexual offenders under the Act is part of a nonpunitive regulatory framework." *Id.* at *10. Of particular relevance to the case at bar, the court noted that, with the adoption of the Act:

> What did change is the classification of that crime within a nonpunitive regulatory scheme designed to address the danger of recidivism and to protect the health and safety of the public. *John Doe's reclassification is not punishment; rather it is a function of a changing and evolving regulatory scheme that applies to him because of the particular crime he committed.* "The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that convictions of specified crimes should entail particular regulatory consequences." *Smith*, 538 U.S. at 103, 123 S.Ct. at 1153. Since the Act's regulatory scheme is not punishment, changes made within that scheme that alter John Doe's status and reporting requirements are not punishment and do not violate the Ex Post Facto Clause.

*Strain*, 2009 WL 137210, at *6-7 (quoting *Doe v. Bredesen*, 2006 WL 849849, at *10) (emphasis added). With that background, the *Strain* court went on to conclude "that the maintenance of the registry is "part of a nonpunitive regulatory framework" and hold that the registration requirement is not punishment. Both holdings are supported by the findings of the Tennessee Legislature." *Id.* at *7 [footnote omitted].

Most significantly, just this week the Tennessee Supreme Court found that the statute expresses a nonpunitive intent to protect the public and the registration requirement does not inflict additional punishment on one convicted of a sexual offense nor does it alter the range of punishment. Our Supreme Court went on to state that it agreed with the majority of states that "the registration requirements imposed by the sex offender registration act are nonpunitive." *Ward v. State of Tennessee*, No. W2007-01632-SC-R11-PC, ___ S.W.3d ___, 2010 WL _____, at *12 (Tenn. July 7, 2010).

Petitioner has established that he has standing to challenge the constitutionality of the classification and registration requirements of the 2004 Act given that he is now required to register and provide TBI with personal information to be posted on TBI's website; however, the facts and law presented by Petitioner provide no justification for this court to depart from previous decisions concerning *ex post facto* challenges to the classification of Petitioner as

-12-

a sexual offender or the requirement that Petitioner "register" with the sex offender registry maintained by the TBI and provide his name, address, conviction information, and photo so this may be posted on the TBI's website.

For the foregoing reasons, we hold that the trial court did not err in finding the requirement that Petitioner register with the sex offender registry is "part of a nonpunitive regulatory framework" and that it did not constitute punishment. Thus, we affirm the trial court on this issue.

We now turn our attention to the issues concerning the imposition of restraints as to where Petitioner may work.

## EMPLOYMENT RESTRAINTS

Although the facts are disputed in part, we have determined that Petitioner carried his burden of proving that the issue was ripe – that his employment has been and continues to be adversely affected by the restraints on his employment as it pertains to schools and public parks. Despite the State's argument to the contrary, Petitioner presented independent and credible evidence to establish that he lost his job with Vanderbilt University Medical Center, which he held for a year and a half, due in principal part to the fact that his employment was within the distance restraints of the Act. His direct supervisor at Vanderbilt testified that Petitioner "was terminated because he was in violation of a rule that restricted him from working within a certain distance of children" and the letter of termination from the Human Resource department clearly stated that Petitioner was fired because he was restricted in where he could work and for falsifying his application. Petitioner has established that he has standing to challenge the constitutionality of the employment restraints of the 2004 Act "as applied" to him; therefore, we embark on our analysis of this issue.

Tenn. Code Ann. § 40-39-211(a) dictates that Petitioner shall not "knowingly accept employment within one thousand feet (1,000) of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public." Petitioner asserts that the employment restraint is so punitive in effect, as applied to him, as to negate the General Assembly's stated intention that it is a civil regulatory scheme for the protection of the public. We have already determined that the expressed *intent* of the Tennessee General Assembly with the enactment of the 2004 Act was to establish a civil, non-punitive, regulatory scheme. Accordingly, we will embark on the second step of the intent-effects test as it pertains to the *effects* of restraints on Petitioner's employment.

-13-

1.      AFFIRMATIVE EMPLOYMENT RESTRAINTS.

Although the imposition of certain affirmative restraints has been held by the Sixth Circuit Court of Appeals to be a "sanction approaching the infamous punishment of imprisonment," *Herbert v. Billy*, 160 F.3d 1131, 1137 (6th Cir. 1998) (quoting *Flemming v. Nestor,* 363 U.S. 603, 617 (1960)), the United States Supreme Court has determined that occupational debarments are nonpunitive. *Smith v. Doe*, 538 U.S. 84, 100 (2003) (citing *Hudson v. U.S.*, 522 U.S. 93, 104 (1997) (forbidding further participation in the banking industry); *De Veau v. Braisted*, 363 U.S. 144 (1960) (forbidding work as a union official); *Hawker v. New York*, 170 U.S. 189 (1898) (revoking a medical license)).

In this case the State relies on *Smith* v. *Doe* and *Hudson v. U.S.* to assert that the employment restraints imposed on our petitioner do not constitute punishment. *See Smith v. Doe*, 538 U.S. at 100; *Hudson, 522* U.S. at 104. In *Hudson,* the Supreme Court found the revocation of a privilege, a professional license, was not such an "affirmative disability or restraint" as to rise to punishment, stating: "We have long recognized that 'revocation of a privilege voluntarily granted,' such as a debarment, 'is characteristically free of the punitive criminal element.'" *Hudson,* 522 U.S. at 104 (quoting *Helvering*, 303 U.S. at 399 and n.2).

Although the revocation of a "privilege," a license to engage in a regulated industry, is different from being prohibited from knowingly accepting employment within 1,000 feet of any school, child care facility, public recreation area or public athletic field, we find it analogous. We also find that Petitioner has failed to establish that the 1,000 foot employment restriction, as applied to him under the 2004 Act, is so pervasive as to constitute punishment. Thus, we have determined the employment restraint under the 2004 Act, as applied to Petitioner, does not constitute punishment.

2.      SANCTIONS HISTORICALLY CONSIDERED TO BE PUNISHMENT.

Prohibiting a person from "accepting employment" in numerous but relatively small geographic areas is not a restraint that has historically been considered punishment. Although Petitioner has established that it is a restraint on some of his liberties and it is a restraint that has similarities to conditions typically imposed on sexual offenders while they are on probation, it is not a sanction that has been historically considered to be punishment and the restraint serves a non-punitive purpose – the safety of children.

3.      TRADITIONAL AIMS OF PUNISHMENT.

Generally, the two primary aims of punishment are retribution and deterrence. The employment restraint does not appear to further the aim of retribution; however, it is obvious

that deterrence is the primary purpose of the employment restraint, a principal aim of punishment, and yet as stated immediately above, it serves a non-punitive purpose as well – protecting the safety of children.

4.    ADVANCING A NON-PUNITIVE INTEREST.

The next *Kennedy* factor to be considered is whether the employment restraint advances a non-punitive interest. We have determined the classification and registration components of the Act advance an important non-punitive purpose – public safety – realizing the prospects of recidivism by sexual offenders are high. It does not require an in depth analysis to determine that restricting sexual offenders from accepting employment in the immediate vicinity of schools, child care centers, or public parks advances public safety. Accordingly, we find this factor furthers a substantial non-punitive interest.

5.    EXCESSIVENESS IN RELATION TO THE EXPRESSED INTENT OF THE ACT.

This factor, whether the employment restraint is excessive in relation to the purpose assigned – the intent of the General Assembly – is the factor that is afforded the greatest weight by many jurisdictions. *Pollard*, 908 N.E.2d at 1153 ("We give this factor the greatest weight.") (citing *Wallace v. State*, 905 N.E.2d 371, 383-84). *See, e.g., Keller v. Fayetteville*, 5 S.W.3d 409 (1999) ("It is the . . . final factor which weighs most heavily in the balance in Arkansas, as in most other states: the question of whether the Act is excessive in relation to its alternative purposes.") *Commonwealth v. Mullins*, 905 A.2d 1009, 1017 (Pa. Super. Ct. 2006) ("Most relevant to the issue in the instant appeal [ ] is the last *Mendoza-Martinez* factor . . . , which involves an examination of excessiveness when determining whether a statute has a punitive effect."); *Rodriguez v. State*, 93 S.W.3d 60, 75 (Tex. Crim. App. 2002) ("of all the [*Mendoza-Martinez*] factors, this factor [excessiveness] cuts most directly to the question of which statutes cross the boundaries of civil sanctions, and which do not. Accordingly, we afford this factor considerable weight in deciding whether the amendments are punitive-in-fact") (internal citations omitted). The employment restraint in Tenn. Code Ann. 40-39-211 only pertains to locations where minors congregate – schools, child care centers and public parks. Petitioner was convicted of five sexual offenses and one or more of the victims of his crimes were minors. The bulk of the criminal offenses that bring a sexual offender under the purview of the employment restrictions of Tenn. Code Ann. 40-39-211 involved crimes of which a minor was a victim. Accordingly, we find the restraint of employment in the immediate vicinity of schools, child care centers, and public parks is not excessive in relation to the purpose assigned – the safety of children.

Having considered the five *Kennedy* factors, and particularly the one courts afford the greatest weight, we have determined that the employment restraint under the 2004 Act, as applied to Petitioner, is non-punitive.

**IN CONCLUSION**

The judgment of the trial court is affirmed and this matter is remanded with costs of appeal assessed against John Doe and his surety.

_____
FRANK G. CLEMENT, JR., JUDGE